PREMIER NUTRITION, INC.,
a California Corporation,
Plaintiff,

v.

ORGANIC FOOD BAR, INC.,
a California Corporation
Defendant.

Organic Food Bar, Inc., a California
Corporation, Counterclaimant,

v.

Premier Nutrition, Inc., a California
Corporation, Counterclaim–
Defendant

No. SACV 06–0827AGRNBX.

United States District Court,
C.D. California.

Feb. 12, 2007.

Kamran Fattahi of Law Offices of Kamran Fattahi, Sherman Oaks, CA, for Plaintiff (Premier Nutrition, Inc.).

Jan Weir, Steven M. Hanle, Peter L. Wucetich of Stradling Yocca Carlson & Rauth Newport Beach, CA, for Defendant (Organic Food Bar, Inc.).

## ORDER DENYING DEFENDANT OR-GANIC FOOD BAR, INC.'S MOTION FOR PRELIMINARY INJUNCTION

GUILFORD, District Judge.

Before the Court is the Motion for Preliminary Injunction ("Motion") filed by Defendant Organic Food Bar, Inc. ("OFB"). After considering the moving, opposing, and reply papers, and oral argument by the parties, the Court DENIES Defendant's Motion.

### *BACKGROUND*

This lawsuit centers on OFB's claim that Premier Nutrition, Inc. ("Premier") has infringed OFB's alleged trademark in the term "Organic Food Bar." OFB engages in the marketing, selling, and distribution of nutritional and dietary supplements, including ready-to-eat nutritional food bars. (Declaration of Kamran Fattahi in Support of Premier Nutrition, Inc.'s Motion for Summary Judgment, and In Support of Premier Nutrition, Inc.'s Opposition to Defendant's Motion for Preliminary Injunction ("Fattahi Decl."), Ex. 3.) Most pertinently, OFB markets and sells a line of food products that are made of organic ingredients that display the term "Organic Food Bar" on the packaging. (OFB's Answer to ¶ 13 of Premier's Complaint.)

OFB asserts that it has been exclusively using the term "Organic Food Bar" in connection with nutrition products since 2001. (Declaration of Jack Sigh in Support of Organic Food Bar, Inc.'s Motion for Preliminary Injunction ("Singh Decl.") ¶ 2.) OFB also asserts that its "Organic Food Bar" products are one of the nation's best selling brands of organic nutrition products with annual sales of over $12,000,000 and distribution through retail food stores across the United States. (Singh Decl. ¶ 3.) OFB claims that it supports and drives these sales by spending roughly $2,000,000 a year advertising and promoting its "Organic Food Bar" products. (Singh Decl. ¶ 3.)

Bio International, Inc. ("BII") is OFB's related company or predecessor in interest to the purported mark "Organic Food Bar." (Statement of Fact and Law re: Premier's Motion for Summary Judgment ("Premier's SFL") ¶ 12.) BII attempted to federally register several marks that included the individual words "organic," "food," and "bar" such as "Organic Omega Food Bar," "Organic Omega–3 Food Bar," "Organic Vegan Food Bar," and "Organic Active Greens Food Bar." (Fattahi Decl., Ex. 12–15.) All of these applications were abandoned after the Patent and Trade Office ("PTO") refused to register these marks because the mark was merely descriptive. (Fattahi Decl., Ex. 12–15.)

OFB still does not own a federal trademark registration for the term "Organic Food Bar." On May 3, 2006, OFB filed an application with the PTO to register the purported mark in connection with products OFB identified as "food snack composed predominately of uncooked ingredients." The federal application was refused, and the examining attorney found that the mark was generic. (Fattahi Decl., Ex. 13.) OFB asserts that it is challenging this finding and pursuing registration on the purported mark based on strong evidence of secondary meaning. (Singh Decl. ¶ 4.)

OFB does own two California trademark registrations for "Organic Food Bar." (Singh Decl., Ex. 5.) The first registers the term "Organic Food Bar," but disclaims the words "Organic" and "Food." (Fattahi Decl., Ex. 17.) The second registers the "Organic Food Bar" design. (Fattahi Decl., Ex. 17.)

Since April 2006, Premier has been marketing and selling a food bar that contains organic, raw ingredients. (Complaint ¶ 30.) The packaging of Premier's subject product displays the term "Organic Raw Food Bar." (Plaintiff's Notice of

Lodgment of Physical Evidence in Opposition to Defendant's Motion for Preliminary Injunction, Ex. 1.) OFB claims that this designation has caused confusion among customers and even sophisticated buyers from major retail chains. (Declaration of Linda Riley in Support of Organic Food Bar, Inc.'s Motion for Preliminary Injunction ¶ 2; Declaration of Michael McCasky in Support of Organic Food Bar, Inc.'s Motion for Preliminary Injunction ¶ 2.)[1] OFB claims that it sent Premier two letters requesting that Premier cease and desist from using its product design designation, but Premier has refused. (Singh Decl. ¶ 7.)

***PRELIMINARY INJUNCTION ANALYSIS***

■ A preliminary injunction is a drastic and extraordinary remedy that should not be granted unless the movant, by a clear showing, carries the burden of persuasion. *See Mazurek v. Armstrong,* 520 U.S. 968, 972, 117 S.Ct. 1865, 138 L.Ed.2d 162 (1997). A plaintiff may meet this burden by "demonstrating either (1) a combination of probable success on the merits and the possibility of irreparable injury or (2) that serious questions are raised and the balance of hardships tips sharply in his favor." *Dollar Rent A Car,* 774 F.2d at 1374–75; *Prudential Real Estate Affiliates, Inc. v. PPR Realty, Inc.,* 204 F.3d 867, 874 (9th Cir.2000).

■ "These are not separate tests, but outer reaches of a single continuum." *Dollar Rent A Car,* 774 F.2d at 1374–75

(quoting *Benda v. Grand Lodge of the Int'l Ass'n of Machinists & Aerospace Workers,* 584 F.2d 308, 315 (9th Cir.1978) (internal quotation marks omitted)). However, in any situation, the court must find that there is at least a fair chance of success on the merits, *see Johnson v. California State Bd. of Accountancy,* 72 F.3d 1427, 1430 (9th Cir.1995), and that there is some threat of an immediate irreparable injury. *See Big Country Foods, Inc. v. Board of Ed. Of the Anchorage Sch. Dist.,* 868 F.2d 1085, 1088 (9th Cir.1989).

### 1. LIKELIHOOD OF SUCCESS ON THE MERITS

■ OFB claims that Premier's actions create confusion and constitute unfair competition under Section 43 of the Lanham Act. A successful unfair competition claim requires a showing that the claimant holds a protectable mark and that the alleged infringer's imitating mark is similar enough to "cause confusion, or to cause mistake, or to deceive." *KP Permanent Make–Up, Inc. v. Lasting Impression I, Inc.,* 543 U.S. 111, 117, 125 S.Ct. 542, 160 L.Ed.2d 440 (2004).

### 1.1 Evidence of a Protectable Mark

■ The purported trademark holder bears the ultimate burden of proof in a trademark infringement action. *Yellow Cab Co. v. Yellow Cab of Elk Grove, Inc.,* 419 F.3d 925, 928 (9th Cir.2005) (citing *Tie Tech, Inc. v. Kinedyne Corp.,* 296 F.3d 778, 783 (9th Cir.2002)). "A necessary

---

**1.** Premier objects that this evidence consists of inadmissible hearsay. While this is true, it is well established that "a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits." *University of Texas v. Camenisch,* 451 U.S. 390, 395, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981). The Ninth Circuit has held that "[t]he urgency of obtaining a preliminary injunction necessitates a prompt determination

and makes it difficult to obtain affidavits from persons who would be competent to testify at trial. The trial court may give even inadmissible evidence some weight, when to do so serves the purpose of preventing irreparable harm before trial." *Flynt Distributing Co. v. Harvey,* 734 F.2d 1389, 1394 (9th Cir.1984) (citing 11 Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure, Civil, § 2949 at 471 (1973)). For this reason, the Court evaluates OFB's evidence.

concomitant to proving infringement is, of course, having a valid trademark; there can be no infringement of an invalid mark." *Id.* Federal registration of a mark constitutes prima facie evidence of its validity. 15 U.S.C. § 1057(b). Registration thus serves as a burden shifting mechanism. If a mark is federally registered, it is entitled to a presumption of validity, and the burden of proving invalidity rests on the defendant. *Filipino Yellow Pages,* 198 F.3d at 1146. But, if the purported mark has not been registered, and the defendant asserts invalidity as a defense, the burden shifts to the plaintiff to prove that the mark is valid. *Id.*

There are five categories of trademarks: (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; and (5) fanciful. *KP Permanent Make–Up, Inc. v. Lasting Impression I, Inc.,* 408 F.3d 596, 602 (9th Cir.2005). "Generic marks give the general name of the product; they embrace an entire class of products." *Kendall–Jackson Winery, Ltd. v. E. & J. Gallo Winery,* 150 F.3d 1042, 1047 n. 8 (9th Cir.1998). Thus, generic marks—those that "refer to the genus of which the particular product is a species"—are not protectable as trademarks. *Id.* (citing *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.,* 469 U.S. 189, 194, 105 S.Ct. 658, 83 L.Ed.2d 582 (1985)). "A descriptive term, unlike a generic term, can be a subject for trademark protection under appropriate circumstances." *Filipino Yellow Pages, Inc. v. Asian Journal Publs., Inc.,* 198 F.3d at 1147. Although descriptive terms generally do not enjoy trademark protection, a descriptive term can be protected provided that it has acquired secondary meaning in the minds of consumers, i.e., it has "become distinctive of the [trademark] applicant's goods in commerce." *Id.* (citing *Abercrombie,* 537 F.2d at 10 (quoting 15 U.S.C. § 1052(f)). "The latter three categories of marks, because their intrinsic nature serves to identify a particular source of a product, are

deemed inherently distinctive and are entitled to protection." *Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, 768, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992)).

### 1.1.1 Genericness

■ "To determine whether a term has become generic, we look to whether consumers understand the word to refer only to a particular producer's goods or whether the consumer understands the word to refer to the goods themselves." *Yellow Cab Co. v. Yellow Cab of Elk Grove, Inc.,* 419 F.3d 925, 929 (9th Cir.2005) (citing *KP Permanent Make–Up, Inc.,* 408 F.3d at 604.) One method of determining whether a product is generic is to evaluate whether "buyers understand the term as being identified with 'a particular producer's goods or services' or 'with all such goods and services, regardless of their suppliers.'" *Surgicenters of Am., Inc. v. Medical Dental Surgeries Co.,* 601 F.2d 1011, 1016 (9th Cir.1979). In the latter instance, the term is generic. Similarly, courts in this Circuit have used the "who-are-you/what-are-you" test: A mark answers the buyer's questions 'Who are you?' 'Where do you come from?' 'Who vouches for you?' But the generic name of the product answers the question 'What are you?'" *Filipino Yellow Pages,* 198 F.3d at 1147 (quoting *Official Airline Guides, Inc. v. Goss,* 6 F.3d 1385, 1391 (9th Cir. 1993) (quoting 1 J. Thomas McCarthy, Trademarks and Unfair Competition, § 12.01 (3d ed.1992))). "Whether a mark is generic is a question of fact." *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.,* 240 F.3d 832, 840 (9th Cir.2001).

■ Premier argues that OFB's trademark "Organic Food Bar" is generic. Here, the trademark is not federally registered, and thus, OFB retains the burden of demonstrating its nongenericness for its Lanham Act claims. *Yellow Cab,* 419 F.3d

at 927. Premier cites to its summary judgment motion for legal and factual argumentation to support its contention that OFB's mark is generic. In that motion, Premier claims that dictionary definitions, competitors and trade usage, OFB's own usage, and the PTO Trademark ID manual all support a finding of genericness.

First, Premier argues that "Organic Food Bar" contains defined generic terms. "Dictionary definitions are relevant and often persuasive in determining how a term is understood by the consuming public, the ultimate test of whether a trademark is generic." *Surgicenters of America, Inc. v. Medical Dental Surgeries Co.*, 601 F.2d 1011, 1015 n. 11 (9th Cir. 1979). Premier cites to the examining Patent Attorney's dictionary definitions of each word in the term "Organic Food Bar" to argue that each word is generic, and the combination of the words is equally generic. OFB argues that even if each of the words in the mark are generic, the composite mark should be examined in its entirety, and the entire term is not generic. (Reply Memorandum of Law in Support of Defendant's Motion for Preliminary Injunction ("Reply") 5:16–18.) OFB asserts that "Words which could not individually become a trademark may become one when taken together." *California Cooler, Inc. v. Loretto Winery, Ltd.*, 774 F.2d 1451, 1455 (9th Cir.1985). While this may be true, Premier analogizes the instant case to *In re Gould Paper Corp.*, 834 F.2d 1017 (Fed.Cir.1987), where the Court affirmed the District Court's holding that the purported mark "SCREENWIPE" was generic based on the dictionary definitions of both words and the conclusion that the entire term "would be perceived by the purchasing public as merely a common name for its goods rather than a mark identifying the good's source." *In re Gould Paper Corp.*, 834 F.2d at 1018. This analysis is compelling in the situation at bar, where the individual words of the purported mark, even when viewed together, appear to form a common name for the product.

Next, Premier argues that competitors and companies that stock products from OFB as well as their competitors refer to the category of products as organic food bars. Premier submits print-outs of searches conducted on websites that sell such products. (Fattahi Decl., Ex. 5 and 6.) Premier also submits advertisements of products that term themselves "organic food bars." (Fattahi Decl., Ex. 7–9, 19.) In response, OFB relies on a Second Circuit case for the proposition that "a mark is not generic merely because it has some significance to the public as an indication of the nature or class of an article. In order to become generic the principal significance of the word must be its indication of the nature or class of an article, rather than an indication of its origin." *King–Seeley Thermos Co. v. Aladdin Industries, Inc.*, 321 F.2d 577, 580 (2d Cir.1963). While this may be true, Premier's evidence raises the inference that the terms of the purported mark represent the nature and class of the article.

Finally, Premier argues that even the PTO defines the entire "species" of products as organic food bars. Premier submits the PTO Trademark Acceptable Identification of Goods and Services, known as the Trademark ID Manual, to demonstrate that the patent office includes fruit-based organic food bars as a general category. (Fattahi Decl., Ex. 18). Premier argues that this is further proof that "Organic Food Bar" is merely a generic description.

Thus, OFB has submitted only weak evidence that its term is not generic. Without more, the Court finds that there are serious questions relating to the merits of this argument, but OFB has not established a likelihood of success.

### 1.1.2 Secondary Meaning

 OFB claims that their purported mark is descriptive and merits protection because it has acquired secondary meaning. (Motion 9:8–14.) "Secondary meaning has been defined as association, nothing more." *American Scientific Chemical, Inc. v. American Hospital Supply Corp.*, 690 F.2d 791, 793 (9th Cir.1982) (citing *Carter–Wallace, Inc. v. Procter & Gamble Co.*, 434 F.2d 794, 802 (9th Cir. 1970)). "In order to obtain protection for its trade name, plaintiff 'must show that the primary significance of the term in the minds of the consuming public is not the product but the producer.'" *Id.* (citing *Kellogg Co. v. National Biscuit Co.*, 305 U.S. 111, 118, 59 S.Ct. 109, 83 L.Ed. 73 (1938)). Secondary meaning can be established in many ways, including (but not limited to) direct consumer testimony; survey evidence; exclusivity, manner, and length of use of a mark; amount and manner of advertising; amount of sales and number of customers; established place in the market; and proof of intentional copying by the defendant. *Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1358 (9th Cir.1985); *See* 2 J. Thomas McCarthy, Trademarks and Unfair Competition § 15:30 (4th ed.2006).

OFB primarily relies on the declaration of its President Jack Singh ("Singh") to establish secondary meaning. Singh attests to the money OFB spends on advertising, its marketing and distribution channels, and its annual sales. (Singh Decl. ¶ 3.) Premier objects to these operative facts provided by Singh. (Premier Nutrition, Inc.'s Objections to Evidence Presented with Defendant's Motion for Preliminary Injunction ("Premier's Objections") 12:12–14:24.) The Court notes Singh's obvious bias in his statements, and finds that "[e]vidence of secondary meaning from a partial source possesses very limited probative value." *Filipino Yellow Pages*, 198 F.3d at 1152. Singh's vague and uncorroborated testimony is not sufficient to demonstrate that OFB has a significant likelihood of success of establishing that the purported mark has acquired a secondary meaning.

OFB also relies on a report that purportedly shows that OFB's "Organic Food Bar" is the number one selling nutrition bar with organic ingredients in the country. (Reply 6:25–26, citing Singh Decl., Ex. B.) This report does indicate that OFB's bars are the high grossers of the category and provides circumstantial evidence of secondary meaning.

OFB also argues that some retailers have associated the term "Organic Food Bar" with a particular source, not with the product category. (Reply 6:28–7:4.) To support this, OFB presents evidence that buyers from Sam's Club and Vitamin World expressed confusion between OFB's product and Premier's product. (Declaration of Linda Riley in Support of Organic Food Bar Inc's Motion for Preliminary Injunction ("Riley Decl.") ¶ 2, Declaration of Michael McCaskey in Support of Organic Food Bar Inc's Motion for Preliminary Injunction ("McCaskey Decl.") ¶ 2.) In response, Premier attempts to submit evidence to refute the basis of these statements. (Declaration of Kerry Law in Support of Premier Nutrition, Inc.'s Opposition to Defendant's Motion for Preliminary Injunction ("Second Kerry Decl.") ¶¶ 4–5.) The Court is not persuaded that OFB's declarations establish that the purported mark has secondary meaning. Rather, the declarations would tend to demonstrate confusion over the origin of two products using the same terms in their titles. The Court is not convinced by this evidence that consumers associate the term "Organic Food Bar" with a particular source.

Lastly, OFB claims in its reply that its exclusive use of the term "Organic Food Bar" provides evidence of secondary meaning. (Reply 9:3–10:28.) Premier provides evidence that another food brand—"Rebar"—has been using the term "Nutritious Organic Food Bar" on the packaging and marketing materials for their bars since 1999. (Declaration of Jocelyn Bates in Support of Premier Nutrition, Inc.'s Opposition to defendant's Motion for Preliminary Injunction ¶ 8.) OFB claims that the placement, size, and format of Rebar's term "Nutritious Organic Food Bar" shows that Rebar is not using the term to "distinguish Rebar's goods and does not have trademark significance." (Reply 10:15–18.) Relying on its packaging, OFB claims that it's own "Organic Food Bar" term has consistently been used in a trademark sense. (Reply 9:26–28.) Based on these facts before it, the Court does not find that this evidence strongly demonstrates secondary meaning.

While OFB has produced some evidence favoring a finding that OFB has created a strong association between its term and its purported mark, Premier has rebutted much of that evidence or raised substantial opposition to question the validity of OFB's argument. Thus, the Court finds that there are serious questions regarding OFB's ability to demonstrate secondary meaning related to its purported mark.

## 1.2 Likelihood of Customer Confusion

Even if OFB could demonstrate a likelihood of success in establishing that it owns a protectable mark, it still must prove that there is a high likelihood that customers will be confused. A likelihood of confusion exists "when consumers are likely to assume that a product or service is associated with a source other than its actual source because of similarities between the two sources' marks or marketing techniques." *Nutri/System,*

*Inc. v. Con–Stan Indus., Inc.,* 809 F.2d 601, 604 (9th Cir.1987). In *AMF Inc. v. Sleekcraft Boats,* 599 F.2d 341 (9th Cir. 1979), the Ninth Circuit listed eight factors that may. be considered as part of the consumer confusion inquiry. *Id.* at 348–349. The *Sleekcraft* factors are: (1) the similarity of the marks; (2) the strength of the plaintiff's mark; (3) the relatedness or proximity of the goods; (4) the marketing channels used by each party; (5) the degree of care likely to be exercised by the purchaser; (6) the defendant's intent in selecting the mark; (7) evidence of actual confusion; and (8) the likelihood of expansion of the parties product lines. *Id.* Here, the Court evaluates the pertinent factors.

### 1.2.1 Similarity of the Marks

OFB argues that "OFB's Mark and Premier's product name are nearly identical as the entirety of OFB's Mark is incorporated into Premier's name." (Motion 11:23–24.) Further, OFB argues that Premier's use of the term "Organic Raw Food Bar" presents an appearance of a trademark use since Premier's commercial impression and appearance of the term on its packaging are similar. (Motion 12:15–12:3.) OFB argues that the products themselves are similar because they are made "from organic ingredients" and are "of similar size, shape, and price, and are sold for the same purpose of providing an organic alternative for nutrition bars." (Motion 13:7–9.) Finally, OFB argues that both OFB and Premier market their products as being "cold-processed, Gluten free, GMO free, Kosher, dairy free, soy free, and vegan." (12:9–11.) While Premier claims that its packaging is "obviously different" (Opposition 14:5–6), the Court agrees with OFB that the nature of the product and the trade dress is substantially similar. While the font and color of the packaging is not identical, the similarity in the terms used for a product that is sub-

stantially similar would likely be confusing to a customer. Thus, at this preliminary injunction stage, the Court finds that this factor weighs in favor of OFB.

### 1.2.2 Strength of the Mark

OFB buries its argument regarding the strength of the mark factor in its moving papers by titling it "OFB's Customer Recognition is Strong." (Motion 14:22–15:6.) Then, OFB repeats its general claims related to the acquisition of secondary meaning. (Motion 14:22–15:6.) In response, Premier repeats its argument that OFB's mark is not protectable or is at best a weak mark and argues that this factor should weigh against the likelihood of confusion. (Opp.12:7–13:20.) Based on the analysis of section 1.1, where the Court established that OFB only raised serious questions about the protectability of the mark, the Court finds that this factor weighs against OFB at this stage of the litigation.

### 1.2.3 Marketing Channels Used By Both Parties

OFB argues that the marketing channels of both products are similar as "[b]oth parties operate their businesses in the same geographic region and market their products through the same channels." (Motion 14:4–5.) Premier does not dispute this. (Opposition 17:26.) Thus, based on the evidence provided at this point, this factor weighs in favor of OFB.

### 1.2.4 Actual Confusion

Next, OFB argues that there is evidence of actual confusion. While this factor is not determinative, "Evidence of actual confusion is persuasive proof that future confusion is likely." *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.,* 826 F.2d 837, 845 (9th Cir.1987). Here, OFB presents hearsay evidence that buyers from Sam's Club and Vitamin World expressed confusion between OFB's product and Premier's

product. (Riley Decl. ¶ 2, McCaskey Decl. ¶ 2.) In response, Premier submits evidence to refute these statements. (Declaration of Kerry Law in Support of Premier Nutrition, Inc.'s Opposition to Defendant's Motion for Preliminary Injunction ("Second Kerry Decl.") ¶¶ 4–5.) As stated above, neither OFB's hearsay statements nor Premier's inconclusive evidence persuades the Court. Based on the evidence provided at this preliminary injunction stage, the Court finds that this factor is neutral.

### 1.2.5 Defendant's Intent

OFB also argues that Premier is intentionally using OFB's mark. To rely on this factor, OFB must show that Premier "intended to profit by *confusing consumers.*" *Toho Co. v. Sears, Roebuck & Co.,* 645 F.2d 788, 791 n. 2 (9th Cir.1981) (emphasis in original). Here, the only evidence that OFB provides is Premier's "documented history of trying to trade off the good will of other businesses' products by infringing their trademarks and/or trade dress." (Motion 16:27–28.) Premier objects to this evidence. (Premier's Objections 1:6–3–13). The Court agrees with Premier, and the Court will not consider any such evidence, including the submitted evidence of irrelevant prior stipulated judgments. (Declaration of Peter L. Wucetich in Support of Organic Food Bar, Inc.'s Motion for a Preliminary Injunction, Ex. A and B.) Thus, on the record before it, the Court also finds that this factor is neutral.

### 1.2.6 Conclusion

After weighing these factors, the Court finds that sufficient factors weigh in favor of OFB at this time. Thus, the Court finds that OFB may likely prove a likelihood of consumer confusion.

### 1.3 Premier's Fair Use Defense

▮▮▮▮ Premier argues that even if OFB's mark is deemed protectable, Premier will establish that its use of the purported mark is a fair use. "[T]he classic fair use analysis is appropriate where a defendant has used the plaintiff's mark only to describe his own product, and not at all to describe the plaintiff's product." *Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1150–52 (9th Cir.2002). In the Ninth Circuit, "the classic fair use defense is not available if there is a likelihood of customer confusion as to the origin of the product." *Id.* at 1151; *see also Brother Records, Inc. v. Jardine*, 318 F.3d 900, 907 (9th Cir.2003). Because here, OFB has established a likelihood of success on the customer confusion prong of their infringement claim, the Court concludes that this defense is not likely to succeed.

### 1.4 OFB's False Representation Claim

▮▮▮▮ OFB also requests a preliminary injunction on its claim that "Premier's misrepresentations of the qualities and characteristics of its 'Organic Raw Food Bar' constitutes false advertising under Section 43 of the Lanham Act." (Motion 18:15–17.) To state a claim for false advertising under section 43(a) of the Lanham Act, a party must allege:

(1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products.

*Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir.1997) (citations omitted). To establish falsity under section 43(a), a plaintiff must show either that the advertising was literally false or that it was literally true but likely to mislead or confuse consumers. *Id.*

▮▮▮ Here, OFB supports this claim with evidence that Premier's packaging states that its bar is "dairy-free," "soy free," "gluten free," and "vegan," but also states that the product is "manufactured in a facility that uses soy, dairy, eggs, [and] wheat ingredients." (Motion 19:5–9.) This claim was not raised within OFB's counterclaims and therefore is improperly before the Court with this motion. Moreover, the Court finds that this evidence, without more, is not sufficient to demonstrate falsity or likelihood to mislead consumers. Thus, OFB has not demonstrated a likelihood of success on this claim.

### 1.5 Disposition of Likelihood of Success

The volume of evidence required to prove, or disprove, the validity of a trademark is not well-suited to the early stages of litigation such as this motion for preliminary injunctive relief. Given the urgency of OFB's request for equitable relief, the Court need not at this time make conclusive determinations on the issues of whether OFB's marks are generic or have acquired secondary meaning. Similarly, the Court is not required to conclusively determine that Premier's mark is likely to create customer confusion. Rather, the Court's role in deciding a motion for preliminary injunction is to evaluate the limited record before it and make a determination regarding the moving party's probability of success on the merits. Based on the evidence presented,

the Court concludes that, at best, serious questions exist relating to the validity of OFB's trademark, falling short of a showing of probable success. Because the validity of the OFB mark is a threshold issue upon which all subsequent analysis of unfair competition depends, the Court's analysis of those issues mandates that the Court find that serious issues have been raised as to the merits of the majority of its unfair competition claim. The Court finds that OFB has not demonstrated a likelihood of prevailing of the false representation portion of its claim.

## 2. BALANCE OF HARDSHIPS

Once the Court has concluded that "serious questions" are raised about the merits, it must determine whether "the balance of hardships tips sharply in favor of the moving party." *Stuhlbarg*, 240 F.3d at 840. "In evaluating the balance of hardships a court must consider the impact granting or denying a motion for a preliminary injunction will have on the respective enterprises." *International Jensen v. Metrosound U.S.A.*, 4 F.3d 819, 827 (9th Cir.1993) (considering the relative size and strength of the parties). In its briefs, OFB relies heavily on the presumption of irreparable harm that accompanies a determination of a probability of success on the merits. "In trademark infringement or unfair competition actions, once the plaintiff establishes a likelihood of confusion, it is ordinarily presumed that the plaintiff will suffer irreparable harm if injunctive relief is not granted." *Vision Sports, Inc. v. Melville Corp.*, 888 F.2d 609, 612 n. 3 (9th Cir.1989). Here, because serious questions are raised regarding the likelihood of its success at trial, OFB does not benefit from the presumption of irreparable harm if the Court does not issue the preliminary injunction.

"An irreparable harm is one that cannot be redressed by a legal or equitable remedy following trial." *Optinrealbig.com. LLC v. Ironport Sys.*, 323 F.Supp.2d 1037, 1051 (N.D.Cal.2004) (citing *Public Util. Comm'n v. FERC*, 814 F.2d 560, 562 (9th Cir.1987)). Mere financial injury does not constitute irreparable harm if adequate compensatory relief will be available in the course of litigation. *Sampson v. Murray*, 415 U.S. 61, 89–90, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974); *Goldie's Bookstore v. Superior Court of the State of California*, 739 F.2d 466, 471 (9th Cir.1984). In some instances, damage to reputation or goodwill, because it is difficult to calculate, qualifies as irreparable harm. *See Rent–A–Center, Inc. v. Canyon Television & Appliance*, 944 F.2d 597, 603 (9th Cir.1991). Business goodwill includes a company's reputation. *See WMX Techs. v. Miller*, 80 F.3d 1315, 1325 (9th Cir. 1996).

Here, OFB has not provided the Court with any evidence of irreparable harm aside from its argument that it may experience a loss of good will and customer confusion due to misleading statements on Premier's packaging. This vague and unsupported argument is not sufficient to establish irreparable injury. Moreover, OFB's argument that it has substantially invested in its product is not any more persuasive than Premier's claims that it will be severely harmed by an injunction which prevents it from practicing its business and would damage the "significant investments made." (Opposition 20:27–21:1.) While OFB attempts to bolster its case by stating that Premier has acted in bad faith by launching their new brand (Reply 3:5–20), OFB merely relies on irrelevant evidence of Premier's unrelated actions that have been the subject of other lawsuits. This is not sufficient to demonstrate that the balance of harms tip sharply in their direction. .

Thus, the Court does not find that OFB has demonstrated that the balance of hardships tip decidedly in its favor.

***DISPOSITION***

At this time, the Court finds that analysis of OFB's evidence in support of its claims yield at most the conclusion that it has only raised serious questions about the merits of its claims. The Court also finds that the balance of hardships does not tip strongly in its favor. Accordingly, OFB's Motion is DENIED.

**IT IS SO ORDERED.**