# KP PERMANENT MAKE-UP, INC. *v.* LASTING IMPRESSION I, INC., ET AL.

No. 03–409.   Argued October 5, 2004—Decided December 8, 2004

112

SOUTER, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and STEVENS, O'CONNOR, KENNEDY, THOMAS, and GINSBURG, JJ., joined, in which SCALIA, J., joined as to all but footnotes 4 and 5, and in which BREYER, J., joined as to all but footnote 6.

*Michael Machat* argued the cause and filed briefs for petitioner.

*Patricia A. Millett* argued the cause for the United States as *amicus curiae* urging reversal. With her on the brief were former *Solicitor General Olson, Assistant Attorney General Keisler, Deputy Solicitor General Hungar, Anthony J. Steinmeyer, Anthony A. Yang, John M. Whealan, Cynthia C. Lynch,* and *Nancy C. Slutter.*

*Beth S. Brinkmann* argued the cause for respondents. With her on the brief were *Charles C. H. Wu, Mark H. Cheung, Drew S. Days III, Edward W. Gray, Jr., Seth M. Galanter,* and *J. Thomas McCarthy.**

---

*Briefs of *amici curiae* urging reversal were filed for the American Intellectual Property Law Association by *Michael P. Boudett, Denise W. DeFranco,* and *Rick D. Nydegger;* for the Private Label Manufacturers

JUSTICE SOUTER delivered the opinion of the Court.*

The question here is whether a party raising the statutory affirmative defense of fair use to a claim of trademark infringement, 15 U. S. C. §1115(b)(4), has a burden to negate any likelihood that the practice complained of will confuse consumers about the origin of the goods or services affected. We hold it does not.

I

Each party to this case sells permanent makeup, a mixture of pigment and liquid for injection under the skin to camouflage injuries and modify nature's dispensations, and each has used some version of the term "micro color" (as one word or two, singular or plural) in marketing and selling its product. Petitioner KP Permanent Make-Up, Inc., claims to have used the single-word version since 1990 or 1991 on advertising flyers and since 1991 on pigment bottles. Respondents Lasting Impression I, Inc., and its licensee, MCN International, Inc. (Lasting, for simplicity), deny that KP began using the term that early, but we accept KP's allegation as true for present purposes; the District and Appeals Courts took it to be so, and the disputed facts do not matter to our resolution of the issue.[1] In 1992, Lasting applied to the United States Patent and Trademark Office (PTO) under 15 U. S. C. §1051 for registration of a trademark consisting of

Association by *Arthur M. Handler;* and for Malla Pollack et al. by *Ms. Pollack, pro se.*

*Robert A. Long, Jr.,* filed a brief for the Society of Permanent Cosmetic Professionals et al. as *amici curiae* urging affirmance.

*William D. Raman, Theodore H. Davis, Jr.,* and *Olivia Maria Baratta* filed a brief for the International Trademark Association as *amicus curiae.*

*JUSTICE SCALIA joins all but footnotes 4 and 5 of this opinion. JUSTICE BREYER joins all but footnote 6.

[1] We note that in its brief to the Court of Appeals, Lasting appears to have conceded KP's use of "microcolor" in the early 1990's. Appellants' Opening Brief in No. 01–56055 (CA9), p. 8.

the words "Micro Colors" in white letters separated by a green bar within a black square.[2] The PTO registered the mark to Lasting in 1993, and in 1999 the registration became incontestable. § 1065.

It was also in 1999 that KP produced a 10-page advertising brochure using "microcolor" in a large, stylized typeface, provoking Lasting to demand that KP stop using the term. Instead, KP sued Lasting in the Central District of California, seeking, on more than one ground, a declaratory judgment that its language infringed no such exclusive right as Lasting claimed.[3] Lasting counterclaimed, alleging, among other things, that KP had infringed Lasting's "Micro Colors" trademark.

KP sought summary judgment on the infringement counterclaim, based on the statutory affirmative defense of fair use, 15 U. S. C. § 1115(b)(4). After finding that Lasting had conceded that KP used the term only to describe its goods and not as a mark, the District Court held that KP was acting fairly and in good faith because undisputed facts showed that KP had employed the term "microcolor" continuously from a time before Lasting adopted the two-word, plural variant as a mark. Without enquiring whether the practice was likely to cause confusion, the court concluded that KP had made out its affirmative defense under § 1115(b)(4) and

---

[2] A trademark may be "any word, name, symbol, or device, or any combination thereof . . . used by a person . . . to identify and distinguish his or her goods . . . from those manufactured and sold by others and to indicate the source of the goods, even if that source is unknown." 15 U. S. C. § 1127.

[3] We summarize the proceedings in this litigation only as they are relevant to the question before us. The District Court's findings as to the generic or descriptive nature of the term "micro color" and any secondary meaning that term has acquired by any of the parties, see Case No. SA CV 00–276–GLT (EEx) (CD Cal., May 16, 2001), pp. 3–5, 5–8, are not before us. Nor are the Court of Appeals's holdings on these issues. See 328 F. 3d 1061, 1068–1071 (CA9 2003). Nor do we address the Court of Appeals's discussion of "nominative fair use." Id., at 1071–1072.

entered summary judgment for KP on Lasting's infringement claim. See Case No. SA CV 00–276–GLT (EEx) (May 16, 2001), pp. 8–9, App. to Pet. for Cert. 29a–30a.

On appeal, 328 F. 3d 1061 (2003), the Court of Appeals for the Ninth Circuit thought it was error for the District Court to have addressed the fair use defense without delving into the matter of possible confusion on the part of consumers about the origin of KP's goods. The reviewing court took the view that no use could be recognized as fair where any consumer confusion was probable, and although the court did not pointedly address the burden of proof, it appears to have placed it on KP to show absence of consumer confusion. *Id.,* at 1072 ("Therefore, KP can only benefit from the fair use defense if there is no likelihood of confusion between KP's use of the term 'micro color' and Lasting's mark"). Since it found there were disputed material facts relevant under the Circuit's eight-factor test for assessing the likelihood of confusion, it reversed the summary judgment and remanded the case.

We granted KP's petition for certiorari, 540 U. S. 1099 (2004), to address a disagreement among the Courts of Appeals on the significance of likely confusion for a fair use defense to a trademark infringement claim, and the obligation of a party defending on that ground to show that its use is unlikely to cause consumer confusion. Compare 328 F. 3d, at 1072 (likelihood of confusion bars the fair use defense); *PACCAR Inc.* v. *TeleScan Technologies, L. L. C.,* 319 F. 3d 243, 256 (CA6 2003) ("[A] finding of a likelihood of confusion forecloses a fair use defense"); and *Zatarains, Inc.* v. *Oak Grove Smokehouse, Inc.,* 698 F. 2d 786, 796 (CA5 1983) (alleged infringers were free to use words contained in a trademark "in their ordinary, descriptive sense, so long as such use [did] not tend to confuse customers as to the source of the goods"), with *Cosmetically Sealed Industries, Inc.* v. *Chesebrough-Pond's USA Co.,* 125 F. 3d 28, 30–31 (CA2 1997) (the fair use defense may succeed even if there is likelihood

of confusion); *Shakespeare Co.* v. *Silstar Corp. of Am., Inc.,* 110 F. 3d 234, 243 (CA4 1997) ("[A] determination of likely confusion [does not] preclud[e] considering the fairness of use"); *Sunmark, Inc.* v. *Ocean Spray Cranberries, Inc.,* 64 F. 3d 1055, 1059 (CA7 1995) (finding that likelihood of confusion did not preclude the fair use defense). We now vacate the judgment of the Court of Appeals.

## II

## A

The Trademark Act of 1946, known for its principal proponent as the Lanham Act, 60 Stat. 427, as amended, 15 U. S. C. § 1051 *et seq.,* provides the user of a trade or service mark with the opportunity to register it with the PTO, §§ 1051, 1053. If the registrant then satisfies further conditions including continuous use for five consecutive years, "the right . . . to use such registered mark in commerce" to designate the origin of the goods specified in the registration "shall be incontestable" outside certain listed exceptions. § 1065.

The holder of a registered mark (incontestable or not) has a civil action against anyone employing an imitation of it in commerce when "such use is likely to cause confusion, or to cause mistake, or to deceive." § 1114(1)(a). Although an incontestable registration is "conclusive evidence . . . of the registrant's exclusive right to use the . . . mark in commerce," § 1115(b), the plaintiff's success is still subject to "proof of infringement as defined in section 1114," *ibid.* And that, as just noted, requires a showing that the defendant's actual practice is likely to produce confusion in the minds of consumers about the origin of the goods or services in question. See *Two Pesos, Inc.* v. *Taco Cabana, Inc.,* 505 U. S. 763, 780 (1992) (STEVENS, J., concurring); *Lone Star Steakhouse & Saloon, Inc.* v. *Alpha of Virginia, Inc.,* 43 F. 3d 922, 935 (CA4 1995); Restatement (Third) of Unfair Competition § 21, Comment *a* (1995) (hereinafter Restate-

ment). This plaintiff's burden has to be kept in mind when reading the relevant portion of the further provision for an affirmative defense of fair use, available to a party whose

> "use of the name, term, or device charged to be an infringement is a use, otherwise than as a mark, . . . of a term or device which is descriptive of and used fairly and in good faith only to describe the goods or services of such party, or their geographic origin . . . ." § 1115(b)(4).

Two points are evident. Section 1115(b) places a burden of proving likelihood of confusion (that is, infringement) on the party charging infringement even when relying on an incontestable registration. And Congress said nothing about likelihood of confusion in setting out the elements of the fair use defense in § 1115(b)(4).

Starting from these textual fixed points, it takes a long stretch to claim that a defense of fair use entails any burden to negate confusion. It is just not plausible that Congress would have used the descriptive phrase "likely to cause confusion, or to cause mistake, or to deceive" in § 1114 to describe the requirement that a markholder show likelihood of consumer confusion, but would have relied on the phrase "used fairly" in § 1115(b)(4) in a fit of terse drafting meant to place a defendant under a burden to negate confusion. "'[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'" *Russello* v. *United States*, 464 U. S. 16, 23 (1983) (quoting *United States* v. *Wong Kim Bo*, 472 F. 2d 720, 722 (CA5 1972); alteration in original).[4]

---

[4] Not only that, but the failure to say anything about a defendant's burden on this point was almost certainly not an oversight, not after the House Subcommittee on Trademarks declined to forward a proposal to provide expressly as an element of the defense that a descriptive use be

Nor do we find much force in Lasting's suggestion that "used fairly" in § 1115(b)(4) is an oblique incorporation of a likelihood-of-confusion test developed in the common law of unfair competition. Lasting is certainly correct that some unfair competition cases would stress that use of a term by another in conducting its trade went too far in sowing confusion, and would either enjoin the use or order the defendant to include a disclaimer. See, e. g., *Baglin* v. *Cusenier Co.*, 221 U. S. 580, 602 (1911) ("[W]e are unable to escape the conclusion that such use, in the manner shown, was to serve the purpose of simulation . . ."); *Herring-Hall-Marvin Safe Co.* v. *Hall's Safe Co.*, 208 U. S. 554, 559 (1908) ("[T]he rights of the two parties have been reconciled by allowing the use, provided that an explanation is attached"). But the common law of unfair competition also tolerated some degree of confusion from a descriptive use of words contained in another person's trademark. See, e. g., *William R. Warner & Co.* v. *Eli Lilly & Co.*, 265 U. S. 526, 528 (1924) (as to plaintiff's trademark claim, "[t]he use of a similar name by another to truthfully describe his own product does not constitute a legal or moral wrong, even if its effect be to cause the public to mistake the origin or ownership of the product"); *Canal Co.* v. *Clark*, 13 Wall. 311, 327 (1872) ("Purchasers may be mistaken, but they are not deceived by false representations, and equity will not enjoin against telling the truth"); see also 3 L. Altman, Callmann on Unfair Competition, Trademarks and Monopolies § 18:2, pp. 18–8 to 18–9, n. 1 (4th ed. 2004) (citing cases). While these cases are consistent with taking account of the likelihood of consumer confusion as one consideration in deciding whether a use is fair, see Part II–B, *infra*, they do not stand for the proposition that an assessment of

---

"'[un]likely to deceive the public.'" Hearings on H. R. 102 et al. before the Subcommittee on Trade-Marks of the House Committee on Patents, 77th Cong., 1st Sess., 167–168 (1941) (hereinafter Hearings) (testimony of Prof. Milton Handler).

confusion alone may be dispositive. Certainly one cannot get out of them any defense burden to negate it entirely.

Finally, a look at the typical course of litigation in an infringement action points up the incoherence of placing a burden to show nonconfusion on a defendant. If a plaintiff succeeds in making out a prima facie case of trademark infringement, including the element of likelihood of consumer confusion, the defendant may offer rebutting evidence to undercut the force of the plaintiff's evidence on this (or any) element, or raise an affirmative defense to bar relief even if the prima facie case is sound, or do both. But it would make no sense to give the defendant a defense of showing affirmatively that the plaintiff cannot succeed in proving some element (like confusion); all the defendant needs to do is to leave the factfinder unpersuaded that the plaintiff has carried its own burden on that point. A defendant has no need of a court's true belief when agnosticism will do. Put another way, it is only when a plaintiff has shown likely confusion by a preponderance of the evidence that a defendant could have any need of an affirmative defense, but under Lasting's theory the defense would be foreclosed in such a case. "[I]t defies logic to argue that a defense may not be asserted in the only situation where it even becomes relevant." *Shakespeare Co. v. Silstar Corp.*, 110 F. 3d, at 243. Nor would it make sense to provide an affirmative defense of no confusion plus good faith, when merely rebutting the plaintiff's case on confusion would entitle the defendant to judgment, good faith or not.

Lasting tries to extenuate the anomaly of this conception of the affirmative defense by arguing that the oddity reflects the "vestigial" character of the fair use defense as a historical matter. Tr. of Oral Arg. 39. Lasting argues that, because it was only in 1988 that Congress added the express provision that an incontestable markholder's right to exclude is "subject to proof of infringement," Trademark Law Revision Act of 1988, § 128(b)(1), 102 Stat. 3944, there was no

requirement prior to 1988 that a markholder prove likelihood of confusion. Before 1988, the argument goes, it was sensible to get at the issue of likely confusion by requiring a defendant to prove its absence when defending on the ground of fair use. When the 1988 Act saddled the markholder with the obligation to prove confusion likely, § 1115(b), the revision simply failed to relieve the fair use defendant of the suddenly strange burden to prove absence of the very confusion that a plaintiff had a new burden to show in the first place.

But the explanation does not work. It is not merely that it would be highly suspect in leaving the claimed element of § 1115(b)(4) redundant and pointless. *Hibbs* v. *Winn,* 542 U. S. 88, 101 (2004) (noting "rule against superfluities" in statutory construction). The main problem of the argument is its false premise: Lasting's assumption that holders of incontestable marks had no need to prove likelihood of confusion prior to 1988 is wrong. See, *e. g., Beer Nuts, Inc.* v. *Clover Club Foods Co.,* 805 F. 2d 920, 924–925 (CA10 1986) (requiring proof of likelihood of confusion in action by holder of incontestable mark); *United States Jaycees* v. *Philadelphia Jaycees,* 639 F. 2d 134, 137, n. 3 (CA3 1981) ("[I]ncontestability [does not] mak[e] unnecessary a showing of likelihood of confusion . . ."); 5 J. McCarthy, Trademarks and Unfair Competition § 32:154, p. 32–247 (4th ed. 2004) ("Before the 1988 Trademark Law Revision Act, the majority of courts held that while incontestability grants a conclusive presumption of the 'exclusive right to use' the registered mark, this did not relieve the registrant of proving likelihood of confusion").

### B

Since the burden of proving likelihood of confusion rests with the plaintiff, and the fair use defendant has no freestanding need to show confusion unlikely, it follows (contrary to the Court of Appeals's view) that some possibility of consumer confusion must be compatible with fair use, and so it

is. The common law's tolerance of a certain degree of confusion on the part of consumers followed from the very fact that in cases like this one an originally descriptive term was selected to be used as a mark, not to mention the undesirability of allowing anyone to obtain a complete monopoly on use of a descriptive term simply by grabbing it first. *Canal Co. v. Clark,* 13 Wall., at 323–324, 327. The Lanham Act adopts a similar leniency, there being no indication that the statute was meant to deprive commercial speakers of the ordinary utility of descriptive words. "If any confusion results, that is a risk the plaintiff accepted when it decided to identify its product with a mark that uses a well known descriptive phrase." *Cosmetically Sealed Industries, Inc.* v. *Chesebrough-Pond's USA Co.,* 125 F. 3d, at 30. See also *Park 'N Fly, Inc.* v. *Dollar Park & Fly, Inc.,* 469 U. S. 189, 201 (1985) (noting safeguards in Lanham Act to prevent commercial monopolization of language); *Car-Freshner Corp.* v. *S. C. Johnson & Son, Inc.,* 70 F. 3d 267, 269 (CA2 1995) (noting importance of "protect[ing] the right of society at large to use words or images in their primary descriptive sense").[5] This right to describe is the reason that descriptive terms qualify for registration as trademarks only after taking on secondary meaning as "distinctive of the applicant's goods," 15 U. S. C. § 1052(f), with the registrant getting an exclusive right not in the original, descriptive sense, but only in the secondary one associated with the markholder's goods, 2 McCarthy, *supra,* § 11:45, p. 11–90 ("The only aspect of the mark which is given legal protection is that penumbra or fringe of secondary meaning which surrounds the old descriptive word").

---

[5] See also Hearings 72 (testimony of Wallace Martin, Chairman, American Bar Association Committee on Trade-Mark Legislation) ("Everybody has got a right to the use of the English language and has got a right to assume that nobody is going to take that English language away from him").

While we thus recognize that mere risk of confusion will not rule out fair use, we think it would be improvident to go further in this case, for deciding anything more would take us beyond the Ninth Circuit's consideration of the subject. It suffices to realize that our holding that fair use can occur along with some degree of confusion does not foreclose the relevance of the extent of any likely consumer confusion in assessing whether a defendant's use is objectively fair. Two Courts of Appeals have found it relevant to consider such scope, and commentators and *amici* here have urged us to say that the degree of likely consumer confusion bears not only on the fairness of using a term, but even on the further question whether an originally descriptive term has become so identified as a mark that a defendant's use of it cannot realistically be called descriptive. See *Shakespeare Co.* v. *Silstar Corp.,* 110 F. 3d, at 243 ("[T]o the degree that confusion is likely, a use is less likely to be found fair . . ." (emphasis deleted)); *Sunmark, Inc.* v. *Ocean Spray Cranberries, Inc.,* 64 F. 3d, at 1059; Restatement § 28; Brief for American Intellectual Property Law Association as *Amicus Curiae* 13–18; Brief for Private Label Manufacturers Association as *Amicus Curiae* 16–17; Brief for Society of Permanent Cosmetic Professionals et al. as *Amici Curiae* 8–11.

Since we do not rule out the pertinence of the degree of consumer confusion under the fair use defense, we likewise do not pass upon the position of the United States, as *amicus,* that the "used fairly" requirement in § 1115(b)(4) demands only that the descriptive term describe the goods accurately. Tr. of Oral Arg. 17. Accuracy of course has to be a consideration in assessing fair use, but the proceedings in this case so far raise no occasion to evaluate some other concerns that courts might pick as relevant, quite apart from attention to confusion. The Restatement raises possibilities like commercial justification and the strength of the plaintiff's mark. Restatement § 28. As to them, it is enough to say here that the door is not closed.

## III

In sum, a plaintiff claiming infringement of an incontestable mark must show likelihood of consumer confusion as part of the prima facie case, 15 U. S. C. § 1115(b), while the defendant has no independent burden to negate the likelihood of any confusion in raising the affirmative defense that a term is used descriptively, not as a mark, fairly, and in good faith, § 1115(b)(4).

Because we read the Court of Appeals as requiring KP to shoulder a burden on the issue of confusion, we vacate the judgment and remand the case for further proceedings consistent with this opinion.[6]

*It is so ordered.*

---

[6] The record indicates that on remand the courts should direct their attention in particular to certain factual issues bearing on the fair use defense, properly applied. The District Court said that Lasting's motion for summary adjudication conceded that KP used "microcolor" descriptively and not as a mark. Case No. SA CV 00–276–GLT (EEx), at 8, App. to Pet. for Cert. 29a. We think it is arguable that Lasting made those concessions only as to KP's use of "microcolor" on bottles and flyers in the early 1990's, not as to the stylized version of "microcolor" that appeared in KP's 1999 brochure. See Opposition to Motion for Summary Judgment/Adjudication in Case No. SA CV 00–276–GLT (EEx) (CD Cal.), pp. 18–19; Appellants' Opening Brief in No. 01–56055 (CA9), pp. 31–32. We also note that the fair use analysis of KP's employment of the stylized version of "microcolor" on its brochure may differ from that of its use of the term on the bottles and flyers.