### In re Tracy M. GRAHAM, Beth Ann Graham, Debtor(s).

### No. 06–54764.

United States Bankruptcy Court, S.D. Ohio, Eastern Division.

March 6, 2007.

Scott R. Needleman, Hilliard, OH, for Debtor.

Pamela D. Rice, Columbus, OH, for U.S. Trustee.

*MEMORANDUM OPINION ON*
*MOTION OF U.S.TRUSTEE TO*
*DISMISS CHAPTER 7 CASE*

C. KATHRYN PRESTON, Bankruptcy Judge.

This cause came on for hearing on February 22, 2007, upon the United States Trustee's (the "UST") Motion to Dismiss the above Chapter 7 case (Doc. 37). Present at the hearing were Pamela Rice representing the United States Trustee and Scott R. Needleman representing Tracy Graham and Beth Ann Graham (collectively the "Debtors," or "Mr. Graham" and "Mrs. Graham" respectively). The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the General Order of Reference entered in this district. This is a core proceeding pursuant to 28 U.S.C. § 157(c)(2)(A) and (O).

The UST moves to dismiss this case for abuse pursuant to § 707(b)(2)(A), asserting that various deductions taken by the Debtors on their Official Form B22A are not allowable deductions. The UST further asserts that even if the presumption of abuse does not arise pursuant to § 707(b)(2)(A) or is overcome, dismissal is still appropriate under § 707(b)(3) when considering the totality of the Debtors' financial circumstances.

I. *Statement of Facts.*

Prior to commencement of this Chapter 7 case, Debtor Mr. Graham operated his own business, which ultimately failed. He had been taking no income from the business as it struggled to survive. Debtor Mrs. Graham supported the family and the business with multiple jobs, cash advances on her credit cards and loans. During this time, the Debtors lived in Canal Winchester, Ohio, together with Mrs. Graham's two teenage children from a previous marriage.

When Mr. Graham ultimately decided to close the doors of the business, he began searching for gainful employment. Despite diligent search for six months in numerous fields, he was unable to obtain any offers. Finally, he was recruited by Circuit City, but the position as a regional installation manager required his move to the company headquarters in Richmond, Virginia. Due to the provisions of the Shared Parenting Plan executed ancillary to her divorce, Mrs. Graham loses custody of her children if she relocates out of the area. As a result, Mr. Graham has had to set up a separate household in Richmond, Virginia where he resides the majority of the time. In order to maintain the family unit, one of the Debtors will travel to the other's home almost every weekend; when Mrs. Graham travels to Virginia, of course, she takes her minor children. Although the Debtors jointly earn over $140,000.00 annually, they were unable to overcome the debt load created by the failed business, and filed a Petition for Relief under Chapter 7 of the Bankruptcy Code on August 31, 2006.

As required by the amendments to the Bankruptcy Code wrought by the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA"), at the inception of the case, the Debtors completed and filed the Official Form B22A Statement of Current Monthly Income and Means Test Calculation. On or about September 27, 2006, the Debtors filed an Amended Official Form B22A Statement ("Form" or "Form 22"). The Form 22 reflects "current monthly income" for the Debtors of $9744.10, as that term is currently defined by the Bankruptcy Code. 11 U.S.C. § 101(10A). The expenses on the completed Form include the mortgage payment on their home, Mr. Graham's actual living expenses for his household in Virginia, and expenses for three vehicles

for the family (2003 Chevrolet Cavalier, 2000 Chevrolet pickup truck, and a Harley Davidson motorcycle). The Debtors' Form 22 as completed reflects that the Debtors have disposable income, after deduction of expenses, of less than $6,000.00.

The UST has numerous complaints:

1. That the Debtors have included their home mortgage payment on the Form 22, when in fact they will be surrendering the home according to the Statement of Intention filed pursuant to § 521;

2. That the Form 22 does not have a line for separate living expenses and therefore, the Debtors may include only one set of deductions for housing and related expenses;

3. That Mr. Graham's motorcycle is a luxury vehicle for which expenses should not be allowed;

4. That Mr. Graham's expenses include $950.00 for the commute to Columbus from Virginia for the family weekends, which expense is not allowed under the IRS standards.

Under the UST's recalculation of Form 22, the Debtors have more than $167.00 in monthly disposable income which, when multiplied by 60, exceeds $10,000.00, thereby triggering the presumption of abuse under § 707(b)(2)(A)(I). The UST further complains that even if the Court were to allow these expenses for purposes of Form 22, under the totality of the circumstances, the Debtors' financial picture presents one of abuse which warrants dismissal of this case pursuant to § 707(b)(3). The Court will address each of these items *seriatim.*

## II. *Discussion.*

### A. *Section 707(b)(2) Presumption of Abuse.*

Section 707(b)(1) and (2) of the Bankruptcy Code provide in pertinent part as follows:

(b) (*l*) After notice and a hearing, the court, on its own motion or on a motion by the United trustee, ... may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts, or, with the debtor's consent, convert such a case to a case under chapter 11 or 13 of this title, if it finds that the granting of relief would be an abuse of the provisions of this chapter....

(2) (A)(I) In considering under paragraph (*l*) whether the granting of relief would be an abuse of the provisions of this chapter, the court shall presume abuse exists if the debtor's current monthly income reduced by the amounts determined under clauses (ii), (iii), and (iv), and multiplied by 60 is not less than the lesser of—

(I) 25 percent of the debtor's nonpriority unsecured claims in the case, or $6,000, whichever is greater; or

(II) $10,000.

(ii) (I) The debtor's monthly expenses shall be the debtor's applicable monthly expenses amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides, as in effect on the date of the order for relief, for the debtor, the dependents of the debtor, and the spouse of the debtor in a joint case, if the spouse is not otherwise a dependent....

(iii) The debtor's average monthly payments on account of secured debts shall be calculated as the sum of—

(I) the total of all amounts scheduled as contractually due to secured creditor in each month of the 60

months following the date of the petition; and

(II) any additional payments to secured creditors necessary for the debtor, in filing a plan under chapter 13 of this title, to maintain possession of the debtor's primary residence, motor vehicle . . . that serves as collateral for secured debts; divided by 60.

(B)(i) In any proceeding brought under this subsection, the presumption of abuse may only be rebutted by demonstrating special circumstances, such as a serious medical condition or a call or order to active duty in the Armed Forces, to the extent such special circumstances that justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative.

(ii) In order to establish special circumstances, the debtor shall be required to itemize each additional expense or adjustment of income and to provide—

(I) documentation for such expense or adjustment to income; and

(II) a detailed explanation of the special circumstances that make such expenses or adjustment to income necessary and reasonable. . . .

### *(I) The Debtors' Home Mortgage Expense*

■ The UST first contends that the Debtors should not have deducted on their Form 22 the contractual mortgage payments for their home [1] inasmuch as the Debtors are surrendering the real estate and will not be servicing this debt in the future. Rather, the UST asserts that they should be allowed an expense of only $1,115.00 on Form 22, line 20B, consistent with the Local Standards issued by the IRS for housing and utilities.

Judge Thomas Waldron of this District has recently decided this issue in the case of *In re Sorrell,* 359 B.R. 167 (Bankr. S.D.Ohio 2007). This Court need not reiterate the discussion and conclusions of Judge Waldron; suffice it to say that for all of the reasons articulated and explained in his well-written and well-considered opinion, this Court finds that § 707(b)(2)(A)(iii) requires that the Debtors include the contractual payments for the real estate in the calculation of disposable income on Form 22. The same applies to the entry on line 43 of Form 22 regarding past-due payments on secured claims.

### *(ii) Allowance of Debtor Mr. Graham's Household and Other Expenses*

■ The UST next contends that the expenses inserted by Mr. Graham on line 21 for his separate household are not allowable deductions on Form 22, and do not qualify under the "special circumstances allowed by § 707(b)(2)(B)". First, the UST suggests that the Debtors are limited to the parameters of Official Form B22A, which has only one line for household expenses: If the Debtors had wished to assert entitlement to two sets of household expenses, they should have "split" their cases and filed separate Form 22 forms.

In order to split their cases, the Debtors would have to pay a second filing fee, file two separate statements of financial affairs (an amended statement for one debtor, reflecting only his or her information, and a second statement for the other debtor), two complete set of schedules, an additional set of all the forms mandated by § 521 of the Bankruptcy Code and Rules, and all other documents attendant to the filing of

---

1. See Form 22, line 42, in the amount of $1,438.33.

a bankruptcy case, in addition to the individual Forms 22. The Court finds that the UST's position elevates form over substance, and that there is no requirement in the statute that the Debtors jump through this expensive hoop.

Further, the language of § 707(b)(2) suggests that each debtor may include on Form 22 their individual expenses (to the extent not duplicative and joint) described under the National Standards and Local Standards issued by the IRS. The statute states: *"The debtor's* monthly expenses shall be *the debtor's* applicable monthly expense amounts specified under the National Standards and Local Standards, and *the debtor's* actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which *the debtor* resides, as in effect on the date of the order for relief, for *the debtor . . . . and the spouse of the debtor in a joint case, if the spouse is not otherwise a dependent."* 11 U.S.C. § 707(a)(2)(A)(ii)(I) (emphasis added). This language focuses on each debtor, and specifically excepts the debtor-spouse who is a dependent of the other. None of the language suggests that debtors in a joint case, who have separate expenses, are required to select one set of household expenses for purposes of the calculation under § 707(b)(2). The fact that Official Form B22A does not have a separate line for insertion of a second set of household expenses cannot trump the language of the statute. Accordingly, the Court finds that Mr. Graham's household expenses are proper expenses to be included on Form 22.

■ Even if this were not the case, this Court is of the opinion that the Debtors'

circumstances qualify as "special circumstances" to rebut any presumption of abuse. The UST insists that, although § 707(b)(2)(B) allows rebuttal of a presumption of abuse with "special circumstances," the statute contemplates only circumstances outside the control of the debtor. In the instant case, the UST asserts that the Mr. Graham's employment in another state and second set of household expenses is within the Debtors' control and therefore does not qualify as special circumstances.[2]

■■ Assuming that the UST's position is correct, the Debtors have shown that such special circumstances exist: the Debtor was unable to find employment in the area, despite diligent search. Upon finding suitable and appropriate employment in another state, Mrs. Graham is constrained not to relocate due to the Shared Parenting Plan, which provides that custody of her children is lost if she relocates out of the area. The Court certainly finds special circumstances illustrated in this instance. Furthermore, the term "special circumstances" is not limited in the fashion suggested by the UST. Nothing in the statute suggests or mandates that the "special circumstances" be outside of the control of the debtor. Had Congress intended to place such a restriction on the nature of special circumstances it envisioned, Congress knows well how to construct appropriate language. *See, e.g.,* § 362(n)(2)(B) (". . . filing of the petition resulted from circumstances beyond the control of the debtor . . . ."), § 521(e)(2)(C) (". . . failure to provide a copy of such tax return or such transcript is due to circumstances beyond the control of the debtor . . . ."), and § 1308(b)(2) (". . . failure to

---

**2.** The UST also complains that the husband's separate household expenses are entered on line 21 improperly, and should be entered on line 56. Quite frankly, the Court finds this type of argument an unfortunate waste of the Court's time as well as that of the UST, the Debtors and counsel for the Debtors.

file a return as required under this subsection is attributable to circumstances beyond the control of the debtor. . . ."). When Congress utilizes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress has acted purposely and intended to effect a different application or standard. *KP Permanent Make–Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 118, 125 S.Ct. 542, 160 L.Ed.2d 440 (2004) (internal citations omitted). This Court cannot insert language in the statute which is not present.[3]

### (iii) The Amount of Debtor Mr. Graham's Household and Other Expenses

■ The UST's third contention is that, even if Mr. Graham's additional household expenses are allowed, he has failed to demonstrate that the household expenses rise to the level of $3,182.00, as reflected on Debtors' Form 22. Section 707(b)(2)(B)(ii) provides that in order to establish special circumstances, "[T]he debtor shall be required to itemize each additional expense or adjustment of income and to provide (I) documentation for such expense or adjustment to income; and (II) a detailed explanation of the special circumstances that make such expenses or adjustments to income necessary and reasonable." The Debtor presented evidence that justified his apartment rental expense of $1,165.00[4] and utility expenses (electricity, water, cable/internet and gas service) averaging $163.00 in the aggregate. The Court is satisfied that these are reasonable and necessary expenses inasmuch as the Debtor was required to move to Richmond, Virginia for his employment. He searched but was unsuccessful in finding more modest but appropriate accommodations for a lesser expense, and it is reasonable and necessary for him to have accommodations sufficient to house his family when they are able to reside together.

In addition to his housing and utilities expenses, the Debtor presented evidence that his entry on line 21 includes the expense of commuting back to Ohio to visit his family.[5] Based on the evidence presented,[6] the Court finds that the Debtor makes at least two trips, and sometimes three to Ohio from Virginia at a cost of approximately $160.00 each way, for a total of between $640.00 (two trips) and $960.00

---

3. Additionally, the language utilized by Congress in section 707(b)(2)(B) as possible special circumstances, "serious medical condition or a call or order to active duty in the Armed Forces," does not necessarily connote circumstances beyond the debtor's control. As noted by the court in *In re Thompson*, 350 B.R. 770 (Bankr.N.D.Ohio 2006), a serious medical condition may result from a self inflicted injury, and a call to active duty is a potential consequence of voluntary enlistment in the military reserves. *Thompson*, 350 B.R. at 777.

4. The Debtor also testified that he pays additional rent of $125.00 for a garage space at the apartment; however, no evidence was presented that this was a reasonable or necessary expense.

5. Although line 21 is for adjustment to the local standards for housing and utilities, there is no other line on Form 22 on which Mr. Graham could enter any of these extraordinary expenses. However, § 707 allows a debtor include these expenses and/or demonstrate special circumstances which warrant the additional expenses or adjustments to the current monthly income. The failure of a form to provide a line for entry of an extraordinary expense cannot overcome the statute's recognition that such an expense may exist and be a justifiable adjustment to the debtor's Official Form B22A calculations.

6. Although the Debtor's evidence may be described as marginal, in that it lacked great specificity and documentary support, it was sufficient to carry the Debtor's burden of a preponderance of the evidence.

(three trips) per month. The Court averaged these estimated expenses to derive a mean of $800.00 per month. Thus, by virtue of his special circumstances, Mr.Graham's additional expenses total $2,120.00 per month.[7] Adjusting Mr. Graham's expenses to the amount proven at trial reduces his expense on line 21 of Form 22 by $1,057.00. The Debtors had concluded on their Form 22 that their monthly disposable is ($1,375.00). Reducing that figure by the amount of $1,057.00, leaves the Debtor's Form B22 monthly disposable income of ($318.00). Accordingly, the Debtors have shown that no presumption of abuse exists and that any presumption of abuse is rebutted by their special circumstances.

### B. Section 707(b)(3) Totality of the Circumstances.

The UST asserts that even in the absence of a presumption of abuse under § 707(b)(2), the Court should dismiss this case given the totality of the Debtors' circumstances. Section 707(b)(3) of the Bankruptcy Code provides in pertinent part as follows:

(3) In considering under paragraph (l) whether the granting of relief would be an abuse of the provisions of this chapter in a case in which the presumption in subparagraph (A)(I) of such paragraph does not arise or is rebutted, the court shall consider—

(A) whether the debtor filed the petition in bad faith; or

(B) the totality of the circumstances ... of the debtor's financial situation demonstrates abuse.

In support of this argument, the UST asserts that Mrs. Graham is paying too much for her mortgage expense ($1,300.00) in comparison to the IRS housing standard of $969.00 (for a family of three), that Mr. Graham's housing expense of $1,290.00 is exorbitant in comparison to the IRS standard of $659.00 (for a household of one), that the Debtors are retaining a 2004 Harley Davidson motorcycle, which constitutes a luxury vehicle, and that Mr. Graham's commute to Columbus is not an allowable expense.

■ The Debtors' combined gross income is almost $141,000.00 annually. After deduction of payroll taxes, social security and insurance, the Debtors' net annual take home pay is $104,724.00. In analysis of totality of the circumstances, the Court is not constrained by the IRS standards or by the Official Form B22A, but rather by the Debtors' actual financial situation. Accordingly, it is appropriate to consider the Debtors' Schedules I and J. The UST elicited no testimony regarding the Debtors' housing expense, whether they were continuing to make the mortgage payments on their home in Columbus, Ohio, whether they had investigated the cost of an apartment if the real estate is surrendered, what are the average rents in the area or any other financial information pertaining to the Debtors' housing expense. Merely because the IRS has published Local Standards does not require the Court to accept that figure as determinative of Mrs. Graham's future housing expense. Conversely, Mr. Graham testified that his actual housing expense is $1165.00 per month, plus $125 for a garage. Mr. Graham's testimony was sufficient to satisfy the Court that the expenditure for the apartment (but not the garage) is reasonable and necessary under the circumstances.

---

7. Although the Debtor's counsel alluded to additional travel expenses in the form of meals on the road, occasional overnight stays, and commute expenses for Mrs. Graham, no evidence on these expenses was presented.

While Mr. Graham is in fact retaining a motorcycle and is obligated to service an installment loan in connection with it, giving Mr. Graham two vehicles with debt service, the Court is satisfied that this is reasonable and necessary under Mr. Graham's circumstances: (1) he must travel with his employment and needs reliable transportation; (2) his alternative vehicle is a truck with over 160,000 miles on it that has some mechanical problems and breaks down from time to time; (3) the motorcycle is utilized for business travel as well as the commute to visit his family; (4) it is more economical to operate the motorcycle than the truck, but the motorcycle is unsuitable for travel in the winter during extreme cold or snowy conditions. Accordingly, the Court finds that retaining the motorcycle is not a luxury expense.

Finally, the UST complains about the commute expense incurred by the Mr. Graham, on the basis that the IRS standards do not allow this expense.[8] In a case such as the instant case, this Court cannot object to an expense which is in furtherance of maintaining the family unit and meeting one's obligations as a parent. Thus, Mr. Graham's expense to commute home on weekends is a reasonable and necessary expense, although based on the testimony of Mr. Graham, the Court finds that the expense for this item averages $800.00 per month rather than the $950.00 listed by Mr. Graham on his Schedule J.

There is no evidence that the Debtors maintain an extravagant lifestyle; quite the reverse: The Debtors entered nothing on Schedule J for recreation, entertainment, newspapers, magazines, or charitable contributions. Additionally, there was no entry for Mrs. Graham's travel to Virginia, although she testified that she travels once or twice per month to Virginia for family visits.

The UST has admitted that there is no bad faith illustrated in this case warranting dismissal under § 707(b)(3)(A). Under the totality of the circumstances, the Court finds that the Debtors' financial situation does not illustrate abuse warranting dismissal under § 707(b)(3)(B). The burden of proof is on the UST and UST has simply failed to meet its burden.

### III. Conclusion.

In light of the foregoing, the UST's Motion to Dismiss will be DENIED. A separate order will be entered consistent with this Memorandum.

**IT IS SO ORDERED.**

---

8. Although the UST repeatedly points to the IRS standards, evidently the UST similarly believes that the Court is not constrained to the Form B22 as illustrated by closing arguments: as evidence that the Debtors' circumstances warrant dismissal, the UST points to the Debtors' income as reflected on the Schedule I of $140,000 rather than the "current monthly income" illustrated by the Debtors' Form 22 of $116,928.00.