The SHERWIN–WILLIAMS COMPANY, Plaintiff,

v.

JP INTERNATIONAL HARDWARE, INC., Defendant.

Case No. 1:13–CV–2064.

United States District Court, N.D. Ohio, Eastern Division.

Dec. 13, 2013.

Brodie M. Butland, Hugh E. McKay, Porter, Wright, Morris & Arthur, Cleve-

land, OH, Elisabeth K. O'Neill, Thad Chaloemtiarana, Phillip Barengolts, Pattishall, McAuliffe, Newbury, Hilliard & Geraldson, Chicago, IL, for Plaintiff.

### *ORDER GRANTING MOTION FOR DEFAULT JUDGMENT AND ENTERING PERMANENT INJUNCTION AGAINST JP INTERNATIONAL HARDWARE INC.*

SARA LIOI, District Judge.

Plaintiff The Sherwin–Williams Company (hereinafter "Sherwin–Williams") filed its Complaint herein on September 17, 2013, against Defendant JP International Hardware Inc. (hereinafter "Defendant"). Defendant did not answer the complaint or otherwise plead and Sherwin–Williams moved for entry of default judgment on December 6, 2013.

UPON CONSIDERATION of the motion, the pertinent portions of the record, and being otherwise fully advised in the premises, the Court enters the following Order.

### JURISDICTION

This Court has jurisdiction over the subject matter of all counts of this action and over both parties hereto, and venue is proper. 15 U.S.C. §§ 1051 *et seq.;* 28 U.S.C. § 1391(b).

### FINDINGS OF FACT

1. Sherwin–Williams has manufactured, marketed, and sold high-quality painting tools, including paint brushes, to professional painters and do-it-yourself consumers since 1925. It sells paint brushes throughout the United States in paint supply stores, home improvement stores, including "big box" stores such as Home Depot and Lowes, as well as over the Internet, including through Amazon.com.

2. Since at least as early as 1971, Sherwin–Williams has used the XL mark in connection with paint brushes and since the 1970s, Sherwin–Williams has used a distinctive yellow and brown packaging, known as a "brush keeper," in which it has marketed and sold its XL paint brushes.

3. Since 2010, Sherwin–Williams has used the brush keeper packaging shown in Exhibit A for its XL paint brushes, which includes the following combination of elements (the "XL Brush Keeper Trade Dress")

- a distinctive shade of golden yellow as the background color;

- a small, partial image of the American flag, located at the very top and center of the brush keeper;

- a thick horizontal brown color band going all the way across the brush keeper, approximately one-third of the way down the front of the brush keeper;

- thin gold bands bordering the top and bottom of the aforementioned thick horizontal color band;

- the product line brand name ("PURDY") in large font on the top one-third of the brush keeper;

- the brush brand name ("XL") in large font inside the thick brown band of color;

- a description of the type of brush bristle ("NYLON/POLYESTER") in a smaller font beneath the brush name, located inside the thick brown band of color;

- a description of the type of paint for which the brush is designed ("All Paints and Stains") in font roughly the same size as the font used to designate the type of brush bristle, located beneath the thick horizontal brown band of color;

- a horizontal line that extends almost the entire width of the front of the brush keeper beneath the description of the type of paint for which the brush is designed; and

- a description of the brush's primary attribute directly beneath the aforementioned horizontal line ("Our most versatile brush").

4. Sherwin–Williams' XL Brush Keeper Trade Dress is unique in the painting tool industry and consists of a combination of arbitrarily chosen elements from an infinite array of possibilities for such packaging. The XL Brush Keeper Trade Dress is "arbitrary" product packaging under the taxonomy for distinctiveness used in this Circuit for trademark and product packaging trade dress. *See Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.,* 280 F.3d 619, 633, 636 n. 10 (6th Cir.2002). Therefore, the XL Brush Keeper Trade Dress is inherently distinctive.

5. Additionally, Sherwin–Williams has expended significant sums to advertise and promote paint brushes sold under the XL trademark and in the XL Brush Keeper Trade Dress, and has sold millions of dollars of such paint brushes. Therefore, the XL trademark and the XL Brush Keeper Trade Dress have acquired secondary meaning among consumers in the marketplace.

6. Defendant has sold, offered for sale, and advertised paint brushes and paint brush sets bearing the XL mark and in virtually identical product packaging to the XL Brush Keeper Trade Dress (the "PERFECT-brand brush keeper packaging" shown in Exhibit B). Sherwin–Williams has not authorized or approved Defendant's sales of these products or the PERFECT-brand brush keeper packaging.

## CONCLUSIONS OF LAW

■ Rule 55(a) of the Federal Rules of Civil Procedure states that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules," default judgment may be entered. FED. R.CIV.P. 55(a). Sherwin–Williams' has satisfied the conditions of Rule 55, establishing that Defendant has failed to plead and the Clerk has entered default. Once a default is entered, the "[d]efendants are considered to have admitted all of the well-pleaded allegations in the complaint, including jurisdiction." *Joe Hand Promotions Inc. v. Orim, Inc.,* 110–cv–00743, 2010 WL 3931108 (N.D.Ohio Oct. 5, 2010).

### I. Defendant's PERFECT-brand brush keeper packaging infringes Sherwin–Williams' XL Brush Keeper Trade Dress.

To establish its trade dress infringement claim for its product packaging, Sherwin–Williams must show that: (1) the XL Brush Keeper Trade Dress is not functional; (2) the XL Brush Keeper Trade Dress is distinctive, either because it is inherently distinctive or because it has acquired secondary meaning; and (3) the trade dress of the accused product is likely to cause confusion. *Gen. Motors Corp. v. Lanard Toys, Inc.,* 468 F.3d 405, 414–15 (6th Cir.2006) (citing *Wal–Mart Stores, Inc. v. Samara Bros., Inc.,* 529 U.S. 205, 120 S.Ct. 1339, 146 L.Ed.2d 182 (2000)); *Abercrombie & Fitch,* 280 F.3d at 633 n. 10. The same standard applies to Sherwin–Williams' deceptive trade practices act and Ohio common law claims. *Future Lawn, Inc. v. Maumee Bay Landscape Contractors, L.L.C.,* 542 F.Supp.2d 769, 780 (N.D.Ohio 2008) ("Claims for trademark infringement and false designation of origin under the Ohio Deceptive Trade Practices Act are subject to the same likelihood of confusion standards as its federal coun-

terpart."). Sherwin–Williams satisfies its burden of proof on each element.

## A. The XL Brush Keeper is not functional.

■ Sherwin–Williams XL Brush Keeper Trade Dress is not functional. It is product packaging that is neither "essential to the use or purpose" of a paint brush nor does it "affect the cost or quality" of the paint brush sold in it under traditional functionality doctrine. *Maker's Mark Distillery, Inc. v. Diageo N. Am., Inc.,* 679 F.3d 410, 417–418 (6th Cir.2012) (citing *Qualitex Co. v. Jacobson Prods. Co.,* 514 U.S. 159, 165, 115 S.Ct. 1300, 131 L.Ed.2d 248 (1995)). Clearly, the particular combination of elements of the XL Brush Keeper Trade Dress is not essential to the use or purpose of the paint brushes sold by Sherwin–Williams—they could be sold in a blank brush keeper. To the extent that these elements convey information to painters, the arrangement and selection of these elements is arbitrary and Sherwin–Williams' specific arrangement is unique in the painting tool industry.

The Sixth Circuit expressly has not adopted the concept of aesthetic functionality and has questioned its validity. *Maker's Mark,* 679 F.3d at 418 ("[W]e have not yet plainly stated which test we would apply under aesthetic functionality doctrine ... or that we have even adopted aesthetic functionality doctrine at all." (citations omitted)); *see also Antioch Co. v. W. Trimming Corp.,* 347 F.3d 150, 155–56 (6th Cir.2003) (questioning the validity of aesthetic functionality doctrine in the Sixth Circuit). As explained in *Maker's Mark,*

> The Supreme Court has discussed the concept of aesthetic functionality in dicta, noting that '[i]t is proper to inquire into a significant non-reputation-related disadvantage in cases of [aesthetic] functionality.' We have interpreted this dic-

ta to propose that, 'where an aesthetic feature (like color), serves a significant function ... courts should examine whether the exclusive use of that feature by one supplier would interfere with legitimate competition.'

679 F.3d at 418 (internal citations omitted; quoting *Antioch Co.,* 347 F.3d at 155, and *TrafFix Devices, Inc. v. Marketing Displays, Inc.,* 532 U.S. 23, 33, 121 S.Ct. 1255, 149 L.Ed.2d 164 (2001)). Under this "competition theory of functionality," the Sixth Circuit considers two different tests—the "comparable alternatives" and the "effective competition" tests:

> The test for comparable alternatives asks whether trade-dress protection of certain features would nevertheless leave a variety of comparable alternative features that competitors may use to compete in the market. If such alternatives do not exist, the feature is functional; but if such alternatives do exist, then the feature is not functional.... The effective competition test asks ... whether trade dress protection for a product's feature would hinder the ability of another manufacturer to compete effectively in the market for the product. If such hindrance is probable, then the feature is functional and unsuitable for protection. If the feature is not a likely impediment to market competition, then the feature is nonfunctional and may receive trademark protection.

*Maker's Mark,* 679 F.3d at 418 (citing *Abercrombie & Fitch,* 280 F.3d at 641 n. 16, 642). The XL Brush Keeper Trade Dress is not functional under the "comparable alternatives" test because it is unique among paint brush packages and "[t]here is more than one way to [package a paint brush] to make it look appealing." *See id.* at 418. Moreover, the XL Brush Keeper Trade Dress is product packaging and not

a feature of the paint brush itself.[1] Similarly, the XL Brush Keeper Trade Dress is not functional under the "effective competition" test because Sherwin–Williams' exclusive use of the XL Brush Keeper Trade Dress does not affect in any way the ability of other manufacturers to compete effectively in the market for paint brushes. In this respect, Sherwin–Williams' XL Brush Keeper Trade Dress is similar to the red wax trade dress at issue in *Maker's Mark:* there, the Sixth Circuit upheld the district court's ruling that Maker's Mark's red wax seal for its liquor bottle was not functional because it is not "the only pleasing color of wax ... nor does it put competitors at a significant non-reputation related disadvantage to be prevented from using red dripping wax." *Id.* at 418–419. This reasoning is even more applicable to pure product packaging such as the XL Brush Keeper Trade Dress used by Sherwin–Williams—it is a package upon which an infinite array of designs could be applied. Neither Defendant nor any competitors of Sherwin–Williams need to use a similar—let alone a virtually identical—design. Therefore, the XL Brush Keeper Trade Dress is not functional under any functionality test adopted by this Circuit.

**B. The XL Brush Keeper Trade Dress is inherently distinctive and has acquired secondary meaning.**

■ As unique and arbitrary product packaging for a paint brush, the XL Brush Keeper Trade Dress is inherently distinctive. *See Abercrombie & Fitch,* 280 F.3d at 633 n. 10. Such packaging "normally *is* taken by the consumer to indicate origin." *Wal–Mart Stores, Inc. v. Samara Bros., Inc.,* 529 U.S. 205, 215, 120 S.Ct. 1339, 146 L.Ed.2d 182 (2000) (emphasis original);

see also *Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992).

Even if the XL Brush Keeper Trade Dress were not inherently distinctive, it also has acquired secondary meaning through exclusive use, extensive sales and substantial advertising since its introduction. *See Lanard,* 468 F.3d at 418. Moreover, Defendant's intentional copying of the XL Brush Keeper Trade Dress, which is clear from the close similarity of the PERFECT-brand brush keeper packaging, presents strong evidence of secondary meaning. *Id.* at 419–420.

**C. The PERFECT-brand brush keeper packaging is likely to cause confusion with the XL Brush Keeper Trade Dress.**

■ Defendant's PERFECT-brand brush keeper packaging causes a likelihood of confusion regarding the origin of Defendant's paint brushes. *See Maker's Mark,* 679 F.3d at 419; *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.,* 109 F.3d 275, 280 (6th Cir.1997). Courts in the Sixth Circuit consider eight factors when determining whether a likelihood of confusion exists: 1) strength of the senior mark; 2) relatedness of the goods or services; 3) similarity of the marks; 4) evidence of actual confusion; 5) marketing channels used; 6) likely degree of purchaser care; 7) the intent of defendant in selecting the mark; and 8) likelihood of expansion of the product lines. *See, e.g., Frisch's Restaurants, Inc. v. Elby's Big Boy, Inc.,* 670 F.2d 642, 648 (6th Cir.1982). Each of the *Frisch* factors favors a finding of likely consumer confusion. Therefore,

---

**1.** Sherwin–Williams does not claim rights in the keeper itself, but merely the trade dress on the keeper.

this court will only discuss the most important factors.

The XL Brush Keeper Trade Dress is strong. It consists of arbitrary elements chosen and arranged by Sherwin–Williams in a manner unique in the painting industry. Paint brushes bearing the XL Brush Keeper Trade Dress are sold in various retail locations throughout the country and over the Internet. Sherwin–Williams has spent substantial sums to advertise paint brushes bearing the XL Brush Keeper Trade Dress and its sales of these brushes are significant. These efforts have resulted in consumer recognition of the XL Brush Keeper Trade Dress as signifying Sherwin–Williams' PURDY XL paint brush. *See Daddy's Junky Music Stores,* 109 F.3d at 280 ("A mark is strong and distinctive when the public readily accepts it as the hallmark of a particular source; such acceptance can occur when the mark is unique, when it has received intensive advertisement, or both.").

The parties' respective trade dress is virtually identical, featuring the same ten elements, but displaying different names PERFECT and PURDY. *See Griff Mach. Prods. Co. v. Griptron Sys., Inc.,* No. 84–cv–434, 1985 WL 264325 (N.D.Ohio June 27, 1985) (granting a permanent injunction against infringer for drawing his "Jiff Grips" mark in an "identical format and script as the 'Griff Grips'").

Based on the near identity of the parties' trade dress, this court must infer that Defendant intended to copy Sherwin–Williams' XL Brush Keeper Trade Dress. *See Audi AG v. D'Amato,* 469 F.3d 534, 544 (6th Cir.2006) ("[I]ntent need not be proved by direct evidence of intentional copying. Intent may be inferred."); *see also WSM, Inc. v. Tenn. Sales Co.,* 709 F.2d 1084, 1087 (6th Cir.1983) (holding that it is reasonable to infer a defendant's intent to deceive when a defendant was

aware of plaintiff's mark, yet with an infinity of non-similar designs available chose a very similar design for identical goods). Further, Defendant has used Sherwin–Williams's PURDY name and XL mark in its online sales listings, which is further evidence of an intent to copy. (Compl. ¶ 23); *PACCAR Inc. v. TeleScan Techs.,* 319 F.3d 243, 254 (6th Cir.2003), *overruled on other grounds, KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.,* 543 U.S. 111, 125 S.Ct. 542, 160 L.Ed.2d 440 (2004).

Most importantly for the likelihood of confusion analysis, Sherwin–Williams has provided evidence of actual confusion, even though PERFECT-branded paint brushes have only been sold in the marketplace for a very short time. *Wynn Oil Co. v. Thomas,* 839 F.2d 1183, 1188 (6th Cir.1988) ("Evidence of actual confusion is undoubtedly the best evidence of likelihood of confusion.").

The remaining *Frisch* factors favor Sherwin–Williams as well because the goods and marketing channels are identical. Both parties sell paint brushes, including in sets, to the same purchasers over the Internet in competition with each other. *WSM,* 709 F.2d at 1087 (finding infringement because the defendant's design was "on identical goods in the same channels of trade as that in which [the plaintiff's] mark moved"). Furthermore, the potential sophistication of the purchasers of paint brushes does not alleviate the likelihood of confusion because "[c]onfusingly similar marks may lead a purchaser who is extremely careful and knowledgeable ... to assume nonetheless that the seller is affiliated with or identical to the other party." *Maker's Mark,* 679 F.3d at 423 (citations omitted). Because Defendant's PERFECT-brand brush keeper packaging is identical to the XL Brush Packaging Trade Dress, even sophisticated

purchasers who are familiar with Sherwin–Williams' XL Brush Keeper Trade Dress are likely to be confused when they encounter Defendant's brushes. *Champions Golf Club, Inc. v. Champions Golf Club, Inc.*, 78 F.3d 1111, 1121 (6th Cir.1996) ("[T]he expertise of purchasers does not necessarily preclude a finding that confusion is likely and where the products are identical and the marks are identical, the sophistication of buyers cannot be relied on to prevent confusion." (internal quotations and citations omitted)).

## II. *Defendant's use of the XL mark on its paint brushes infringes Sherwin–Williams' XL trademark.*

■ Sherwin–Williams also alleged that Defendant infringed Sherwin–Williams' common law XL trademark for paint brushes. The facts prove that it has. To establish its trademark infringement claim under Section 43(a) of the Lanham Act Sherwin–Williams must show that it owns protectable rights in the XL mark and that Defendant's use of the XL mark is likely to cause confusion. *Tumblebus Inc. v. Cranmer*, 399 F.3d 754, 761 (6th Cir.2005). The same standard applies to Sherwin–Williams' deceptive trade practices act and Ohio common law claims. *Future Lawn, Inc. v. Maumee Bay Landscape Contractors, L.L.C.*, 542 F.Supp.2d 769, 780 (N.D.Ohio 2008) ("Claims for trademark infringement and false designation of origin under the Ohio Deceptive Trade Practices Act are subject to the same likelihood of confusion standards as its federal counterpart.").

Sherwin–Williams has used the XL mark for paint brushes for over 40 years, it has sold millions of dollars' worth of paint brushes under the XL mark and it has expended hundreds of thousands of dollars to advertise paint brushes sold under the XL mark. These facts establish

Sherwin–Williams' rights in the common law XL mark. *Allard Enters., Inc. v. Advanced Programming Res., Inc.*, 249 F.3d 564, 571–72 (6th Cir.2001) (holding that under Ohio common law, the plaintiff acquired common law trademark rights because of its substantial use for over ten years in a given area).

Defendant's use of an identical mark for identical goods causes a likelihood of confusion. *Wynn Oil Co. v. Thomas*, 839 F.2d 1183, 1190–91 (6th Cir.1988) (finding consumer confusion likely because the marks and services were identical); *see also id.* (citing J. Thomas McCarthy, 4 McCarthy on Trademarks and Unfair Competition § 23:20 (4th ed. 2000) ("Cases where a defendant uses an identical mark on competitive goods hardly ever find their way into the appellate reports. Such cases are 'open and shut' and do not involve protracted litigation to determine liability for trademark infringement.")).

**NOW THEREFORE:**

JUDGMENT IS ENTERED IN FAVOR OF SHERWIN–WILLIAMS AND AGAINST DEFENDANT, AS FOLLOWS:

## I. *Permanent Injunctive Relief*

Defendant, its officers, agents, servants, employees, representatives, attorneys, their successors and assigns, and all other persons, firms, or corporations in active concert or participation with Defendant who receive notice hereof, including but not limited to all subsidiaries, affiliates, distributors, and licensees of Defendant, are enjoined and restrained permanently from:

1) manufacturing, dealing in, advertising, marketing, selling, or distributing products that bear: the PERFECT-brand brush keeper packaging, trade dress similar to the XL Brush Keeper Trade Dress,

the XL mark, or marks similar to the XL mark;

2) using any other trademark or trade dress that tends to falsely represent that, or is likely to confuse, mislead or deceive consumers into believing that, Defendant's paint brushes or other goods or services, originate from Sherwin–Williams or that such goods or services have been sponsored, approved, licensed by, or are in some way connected or affiliated with, Sherwin–Williams; or

3) engaging in any conduct that tends to falsely represent that Defendant, its paint brushes, or its other goods or services are sponsored, approved, licensed by, or are in some way connected or affiliated with, Sherwin–Williams.

## II. *Order of Destruction*

Defendant shall deliver up to Sherwin–Williams for destruction in accordance with 15 U.S.C. § 1118 within 30 days hereof all labels, signs, prints, packages, wrappers, receptacles, advertisements, and products in Defendant's possession bearing the PERFECT-brand brash keeper packaging, the XL mark, or any other similar trademarks or trade dress.

**IT IS SO ORDERED.**

**EXHIBIT A**