SACK, Circuit Judge,
concurring in the result.
I concur in the result reached by the majority. I write separately, however, in the (I hope groundless) fear that the Court’s opinion may be misconstrued to suggest a general limitation upon the ability of a publisher in any medium to use a trademarked term, in good faith, to indicate the contents of its own communication—whether by magazine cover, newspaper headline, “blog” heading, or otherwise. Allowing a person or entity’s property right arbitrarily to trump the ability of the initiator of a communication effectively to transmit news, information, thoughts, and the like, using vernacular words and phrases that are recognizable because they are also used as trademarks, would be, in my view, legally unwarranted and 99 and 44/100 percent[1] foolish.

I. General Principles

The Lanham Act, under which the plaintiffs’ primary cause of action was brought, *316 was never intended “to deprive commercial speakers of the ordinary utility of descriptive words.” KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc., 543 U.S. 111, 122, 125 S.Ct. 542, 160 L.Ed.2d 440 (2004). Thus, the trademark “fair use” defense is animated at least in part by the principle that “[w]hen the plaintiff chooses a mark with descriptive qualities, ... ‘[s]he cannot altogether exclude some kinds of competing uses,’ particularly those which use words in their primary descriptive and non-trademark sense.” U.S. Shoe Corp. v. Brown Group, Inc., 740 F.Supp. 196, 198 (S.D.N.Y.) (Leval, J.) (quoting Abercrombie & Fitch Co. v. Hunting World, Inc., 537 F.2d 4, 12 (2d Cir.1976)), aff'd w/o op., 923 F.2d 844 (2d Cir.1990). “The defendant has as good a right to a descriptive title as has the plaintiff.” Warner Publ’n, Inc. v. Popular Publ’ns, Inc., 87 F.2d 913, 915 (2d Cir.1937).
The stock in trade of those engaged in publishing, in the broadest sense of that term, includes turns of phrase and imagery; words are their raw materials. It would cripple publishers’ effectiveness if trademark holders could obtain exclusive rights to parts of the language for use as language. A perusal of the day’s headlines and magazine covers is, I think, likely to turn up the use of bona fide trademarks, bearing real secondary meaning to consumers, as a means of communication, but without trenching on the rights of the mark’s owner.
Like the copyright laws, the Lanham Act is “designed to balance the needs of merchants for identification as the provider of the goods with the needs of society for free communication and discussion.” Pierre N. Leval, Trademark: Champion of Free Speech, 27 Colum. J.L. & Arts 187, 210 (2004). This principle is important when considering the defendants’ uses of the phrase “Own Your Power!” in this case.[2]
II. The Meaning of “Own ”
Kelly-Brown claims to own the mark “Own Your Power,” as used in connection with the motivational services she offers. Just as the majority begins its analysis by determining in what sense the phrase “as a mark” is and has been used, ante at 305-OS, I think it useful to address at the outset the different senses in which the word “own” is used in this litigation.
When we talk about “owning” a trademark, we obviously use the traditional legal meaning of the word in the sense of “rightfully hav[ing] or possessing] as property.” Black’s Law Dictionary 1214 (9th ed. 2009). Taken literally and using the term “own” in this traditional[3] sense, however, the invocation to “Own Your Power” borders on the absurd. If the “Power” is mine, do I not by definition already “Own” it? What am I being told to do? Or what are the parties telling me that they can do—doubtless at some price—to help me?
Judging by the context in which it has been used by both the plaintiffs and the defendants, it is clear that the meaning of *317 the word “own” here is closer to “embrace and employ”[4] than it is to possess or have legal ownership. This is hardly a novel way to use the term.
By way of an easily accessible example, in the final scene of the popular motion picture The Birdcage (United Artists 1996), a character played by Robin Williams is escorting an uptight, politically and socially conservative character played by Gene Hackman through a “drag club.” Their purpose is to allow Hackman’s character to escape media recognition “by dressing [him and his family] in drag and having them leave the club as the night’s show ends.” The Birdcage, http://en. wikipedia.org/wiki/The_Birdcage (last visited May 28, 2013).
But Hackman’s character, uptight as he is, finds it all-but-impossible to give a convincing portrayal of a man acting and dressed as a woman. Williams’s character turns to him and shouts encouragingly, “Work it. Sell it. Own it.”[5] I think it is almost certainly in this Birdcage sense—to embrace and employ—or one very like it that the parties here used the word “own” in their businesses and publications, if not in discussing who “owns” the trademark at issue.
Using “own” in that sense, the phrase “Own Your Power” has more currency than the plaintiffs let on in their complaint—although the extent to which this precise use antedates either the defendants’ use or the filing of the complaint is unclear. Writers have employed the word “own” in similarly figurative, if not necessarily identical, senses for many years.[6] And by now the phrase “Own Your Power” itself, using “own” in this way, has apparently gained an established meaning in the language.[7]

*318
III. Fair Use as to Use of “Own Your Power!’’ on the Magazine

Understanding the meaning of “Own Your Power” thus, I think that the defendants’ use of it on the cover of the Magazine, without more, is plainly and legally “fair” and therefore lawful. I have- little doubt, more generally, that the use of a trademarked phrase on the cover of a magazine to refer in a general way to its contents is, standing by itself and in most cases, entirely legitimate—a straightforward and significant case of fair use. I differ from the majority insofar as its analysis implies otherwise.
But I understand the majority and I are both reading the plaintiffs’ complaint not to attack this single use standing alone. See ante at 308 (“Kelly-Brown argues that, taken together, these uses suggest that the defendants were attempting to build an association with consumers between the phrase ‘Own Your Power’ and Oprah.” (emphasis added)). It is the defendants’ use seen as part of a campaign of recurring uses, across different media, designed to appropriate the defendants’ source-identifier, or without regard for a high likelihood of that occurring, that defeats their fair use defense. This is not to say that even the use of “Own Your Power” for the Magazine, website, and seminar event (the “Event”) together may not also constitute fair use. Only that any such conclusion is foreclosed at this stage of the proceedings.
As the majority explains, ante at 308, the use of the phrase “Own Your Power” on the Magazine is a fair use, and therefore not actionable under the Lanham Act, if and only if the phrase was used “(1) other than as a mark, (2) in a descriptive sense, and (3) in good faith.” JA Apparel Corp. v. Abboud, 568 F.3d 390, 400 (2d Cir.2009) (internal quotation marks omitted). Because the application of the third element seems to me to be dispositive, I address them in reverse order, i.e., use (1) in good faith, (2) in a descriptive sense, and (3) other than as a mark.
1. Good Faith. Were the issue limited to the use of “Own Your Power!” on the Magazine’s cover, I would conclude that there are no facts plausibly pled that support the conclusion that the defendants “inten[ded] to trade on the good will of the [plaintiffs] by creating confusion as to source or sponsorship.” EMI Catalogue P’ship v. Hill, Holliday, Connors, Cosmopulos Inc., 228 F.3d 56, 66 (2d Cir.2000). But the plaintiffs allege that the Magazine’s use of the phrase “Own Your Power” “was only the beginning of a pattern of deliberate and systematic unauthorized use by Defendants and a malicious intent to identify the [Defendants] as the source for the [Plaintiffs’] Services.” Compl. ¶ 41. Further:
[u]pon information and belief, Defendants knowingly concealed, suppressed, and/or omitted the material fact that they are not the owners of the [Own Your Power] Trademark and the source for motivational communications services in the areas of self-awareness, self-realization, and entrepreneurship under the [Plaintiffs’] Trademark with intent that the public rely on the concealment, suppression, and/or omission in connection, distribution and advertisement of their Counterfeit Campaign.
Compl. ¶ 43. And later:
Upon information and belief, the [Defendants’] multi-tiered campaign, utilizing the extensive reach of television, the internet, and print media, has already reached millions of consumers. Defendants’ media presence has been documented to persuade, influence and command the opinion of its audience. The OYP Partnership’s sheer saturation of the market by Defendants’ concerted ef *319 forts, Counterfeiting and other campaigns have destroyed Plaintiffs’ ability to use the Trademark without reversing the confusion and damage that has already been done.
Compl. ¶ 99.
The plaintiffs have thus alleged facts that raise the plausible inference that the defendants used the phrase on the Magazine cover as part of a careful plan that included the Event and the website, and sought collectively to appropriate the “Own Your Power” mark from the plaintiffs with knowledge that the plaintiffs owned it and with total disregard for the plaintiffs’ rights. I therefore join the majority’s conclusion that a finding of “good faith” with respect to use of the phrase on the Magazine cover is inappropriate at this stage of the proceedings.
It remains, of course, for the plaintiffs to prove their allegations. The evidence may show that the defendants, even knowing of the plaintiffs’ trademark, reasonably believed that the use of the words “Own Your Power” on the Magazine or elsewhere would confuse no one as to source; that the use would in any event be a fair one; or that it was not in fact a calculated part of a more elaborate effort to appropriate the plaintiffs’ property. Cf. Arrow Fastener Co., Inc. v. Stanley Works, 59 F.3d 384, 397 (2d Cir.1995) (“Prior knowledge of a senior user’s trade mark does not necessarily give rise to an inference of bad faith and may be consistent with good faith.”); Campbell v. Acuff-Rose Music Inc., 510 U.S. 569, 585 n.18, 114 S.Ct. 1164, 127 L.Ed.2d 500 (1994) (“Even if good faith were central to [copyright] fair use, 2 Live Crew’s actions do not necessarily suggest that they believed their version was not fair use.... If the use is otherwise fair, then no permission need be sought or granted.”).
2. In a descriptive sense. I would conclude, if we were called upon to do so on the pleadings alone, that the phrase “Own Your Power” was used in a “descriptive sense” in connection with the Magazine’s content as a matter of law. I do not think any contrary reading of the pleadings is plausible.
In Cosmetically Sealed Indust., Inc. v. Chesebrough-Pond’s USA Co., 125 F.3d 28 (2d Cir.1997), the plaintiff owned the registered trademark SEALED WITH A KISS for its product, a women’s lip gloss. Id. at 29. The defendant used the same phrase, “Seal it With a Kiss,” in connection with an advertising display for its Cutex brand lipstick, inviting each prospective customer to leave a print of her lips, with the Cutex lipstick applied, on a postcard; then to “ ‘[t]ake [it] and send it to the one you love!!’ ” Id. We concluded that this use was descriptive even though it in no way described the color, consistency, or long wear of the defendant’s lip gloss. We decided that the defendant used the phrase in a descriptive sense because “Seal it With a Kiss” describes “an action that the sellers hope consumers will take, using their product.” Id. at 30.
Similarly, in B & L Sales Associates v. H. Daroff & Sons, Inc., 421 F.2d 352 (2d Cir.1970), we concluded that the phrase “Come on Strong,” which was used by the plaintiff as a registered trademark for a wide variety of products, was used in a descriptive sense by the defendant in advertisements for its men’s clothing line. We reasoned that the phrase communicates to the prospective customer that defendant’s clothing “would assist the purchaser in projecting a commanding, confident, ‘strong’ image to his friends and admirers.”[8] Id. at 353. We relied *320 upon this understanding to conclude both that the use was not likely to cause confusion and that it was a descriptive fair use. Id. at 354.
The defendants’ use of “Own Your Power” on the Magazine cover fits easily among the uses found to be descriptive in these cases. The feature story in the October issue is the 2010 0 Power List, The 2010 0 Power List, 0 The Oprah Magazine, October 2010, at 198, which honors public figures and other notables who embody certain characteristics of power. Also inside the Magazine are several shorter articles related to this theme. See Dr. Phil, Personal Power: 6 Rules for How to Harness Yours, id. at 74 (providing “strategies for tapping your inner power reserves”); How to Light Up a Room, id. at 214-16 (theorizing that charisma is the “X factor” possessed by all of the people featured on the 2010 O Power List). The descriptive connection is obvious—indeed, it is difficult to see how any potential reader with whom the defendants are trying to communicate, upon picking up the Magazine and reading the coverline, would not expect to find just these sorts of articles inside. I thus find implausible any assertion that the phrase “Own Your Power” is not used in a descriptive sense here.
The majority—although not called upon to do so in light of our shared view that it is plausible that the Magazine cover, as part of the defendants’ alleged overall plan, was in any event not a fair use—finds that the phrase as used specifically on the Magazine cover is not used in a descriptive sense. The majority apparently does not consider the feature article, or the “Personal Power” and “Light Up a Room” articles, to contain “specific advice regarding how a reader can follow in the footsteps” of the subjects featured on the O Power List, or “advice regarding how a reader can become more powerful in general,” ante at 312.
Even if this were a fair characterization of the Magazine’s contents—and I doubt that it is—our law has never required a connection as close and absolute as the majority demands. Fortunately, the majority leaves open the possibility that the defendants may adduce evidence of the requisite descriptive connection, perhaps by either (a) providing a fuller understanding of the sense in which the phrase “Own Your Power” was used and was likely to be understood by the relevant consumer group, and thereby illuminating the nexus between that phrase and the Magazine’s contents; or (b) demonstrating that the phrase or phrases like it are commonly used. I think neither is necessary.
S. Use other than as a mark. Finally, if we were considering individually the size, location, and context of the defen *321 dants’ use of “Own Your Power!” on the cover of the Magazine, as our law seems to prescribe, see JA Apparel Corp., 568 F.3d at 400-01, it would be clear to me that the defendants did not use the phrase as a mark.
The two most prominent items on the cover of the October issue are the “0 The Oprah Magazine” mark in the upper left-hand corner and the full page photograph of Oprah herself. That “the source of the defendants’ product is clearly identified by the prominent display of the defendants’ own trademarks” is a strong indication that the defendants’ use is other than as a mark. Cosmetically Sealed, 125 F.3d at 30. The size and location of the phrase, moreover, considered in light of the context of the use on a magazine cover further suggest that the defendants did not use the phrase “as a symbol to attract public attention.” JA Apparel, 568 F.3d at 400 (emphasis added) (internal quotation marks omitted). A reasonable consumer would therefore expect the phrase to explain something about the nature of the contents of this particular issue, not to denote the source of those contents.
But the majority opinion does not consider this use individually. It concludes instead that the “several unique instances”—that is, the use on the Magazine, at the Event, and on the website—“collectively constitute use as a mark,” ante at 308, apparently because “it is plausible that the defendants were attempting to build up a line of wide-ranging content all denoted by the phrase ‘Own Your Power,’ ” id.
Perhaps this somewhat novel theory is useful at this stage in determining the plausibility of the plaintiffs’ factual allegations.[9] But I do not think, and I do not read the majority opinion to mean, that the mere coincidence of several uses forecloses the possibility that individual uses are “other than as a mark.” They do, I think, assert that if use of “Own Your Power” on the Magazine’s cover was part of an overall plan to appropriate the plaintiffs’ mark, then to that extent the use on the Magazine may be actionable. In order to prevail at summary judgment or trial, then, the plaintiffs must adduce proof in support of that allegation in order to be able to prevail on the claim relating to the Magazine. They must prove, for example, that the Magazine use was indeed part of defendants’ plan to develop a line of goods or services under an “Own Your Power” sub-brand, or that relevant consumers would be likely, perhaps as a result of repetition, to perceive the phrase on the Magazine “as a symbol to attract public attention,” JA Apparel, 568 F.3d at 400 (emphasis added), and not just as a coverline describing the theme of the issue. Whether the plaintiffs can do this, of course, remains to be seen.

IV. The Website and the Event

With respect to the defendants’ use of “Own Your Power” on the website and for the Event, I agree with the majority that the plaintiffs have pleaded sufficient plausible facts to fend off the fair use defense on a motion to dismiss.
* * *
If we were considering the October 2010 issue of the Magazine alone, I would con- *322 elude that the defendants’ use of the trademarked phrase was a “fair” one. I simply do not think we could conclude at this stage, were we asked to do so, that the allegations in the plaintiffs’ complaint relating to the Magazine coverline considered, alone can be read plausibly to describe a use that is anything other than fair as a matter of law. A holding to the contrary might endanger the ability of publishers of all stripes accurately and artfully to describe their publications.
But I, like the majority, understand the complaint not to attack the defendants’ use of “Own Your Power!” on the Magazine’s cover alone, but as part of an overall campaign by the defendants in several media to wrest from the plaintiffs their rights in the mark. It remains possible that a full record will reveal that despite the multiple uses, any or all of them are fair uses, and therefore not actionable under the Lanham Act. I thus conclude, with the majority, that this case must be returned in its entirety to the district court for further proceedings.

. "[Ivory Soap's] ... well-known slogan, '99 44/100% Pure,’ was based on the results of an analysis by an independent laboratory the founder’s son, Harley Procter, hired to demonstrate that Ivory was purer than the castile soap then available.” Ivory Soap, http://en. wikipedia.org/wiki/Ivory_(soap) (last visited May 28, 2013); Christopher Gray, Streetscapes: 11 East 52d Street; Midtown East Town-House Erosion, N.Y. Times, Feb. 21, 1993 ("Harley Proctor ... sent the soap out for scientific analysis and coined the term ‘99 and 44/100 percent pure.’ ”). The Wikipedia entry includes reference to several uses of the slogan by third parties for parody, entertainment, communications, and similar purposes under the heading "In mass media.”

. Parenthetically, and apparently by peculiar coincidence, one of the defendants in this case is Winfrey's production company, "Harpo Productions,” "Harpo” being "Oprah” spelled backwards. Another, unrelated defendant is Chico’s FAS, Inc., the owner of several brands of clothing. Thus the oddity: Two of defendants have the same name as two of the three Marx Brothers.

. "Who steals my purse steals trash; ‘tis something, nothing; ‘Twas mine, ‘tis his, and has been slave to thousands...." William Shakespeare, Othello, act 3, sc. 3.

. Another way to understand the phrase as used by both the plaintiff and the defendants is in less concrete terms: "to possess psychologically,” or "to integrate the power you have into your sense of yourself.” In any event, and under any such approach, the term is used similarly by the parties and is sharply distinguishable from "own” in its traditional sense.

. See http://www.youtube.com/watch?v=d YLk34GCXbo (final scene of The Birdcage) (last visited May 28, 2013) (emphasis added).

. "It was a disguise; it was the refuge of a man afraid to own his own feelings, who could not say, This is what I like—this is what I am....” Virginia Woolf, To The Lighthouse 56 (CRW Publishing Ltd. 2004) (1927).

. See [1] Jewish Woman Magazine, http://www. jwi.org/page.aspx?pid=3406 (last visited May 28, 2013) ("Own Your Power With New Ways of Activism: As women, we have made giant strides, but now’s the time to own your power.” (emphasis added)); [2] Own Your Power! Online Course: The Art & Science of Shifting Consciousnessf;] 8-Lesson Series with Dr. Darren Weissman and Dr. Bruce Lipton, http://www.hayhouse.com/event_details.php? event_id=1692 (last visited May 28, 2013; emphasis added); [3] Shann Vander Leek, True Balance lifecoaching[]j Own Your Personal Power, http://www.truebalance fifecoaching.com/articles/own_your_ personal—power.php (last visited May 28, 2013; emphasis added); [4] Leadership Strategies for Women,® LLC, Own Your Power: 8 Leadership Strategies for Women, http:// leadershipstrategiesforwomen.com/2012/07/ own-your-power-8-leadership-strategies-for-women-2 (last visited May 28, 2013; emphasis added); [5] Amy Appelbaum, Own Your Power: Create Confidence (2012) (hypnotherapy audio book; emphasis added); [6] Tetka Rhu, Own YOUR Power: Goddess Book of Prayers (2010) (emphasis added); [7] Janina Renee, Tarot, Your Everyday Guide: Practical Problem Solving and Everyday Advice 28 (2003) ("Because the Empress is a card of sovereignty, you are encouraged to own your own power....” (emphasis added)). [8] Own Your Power in the Bedroom Workshop for Women, http://marriageintimacyexpert.com/ workshops/own-your-power-in-the-bedroom/ (last visited May 28, 2013; emphasis added).

. We have defined “descriptive sense” in arguably more capacious terms than our sister *320 circuits. A hint as to the breadth of our rule lies in our discussion in Cosmetically Sealed. There, we read a prior case, Car-Freshner Corp. v. S.C. Johnson & Son, Inc., 70 F.3d 267, 270 (2d Cir.1995), as having concluded that the pine-tree shape of a car freshener—a “description (by the suggestive use of the image) of the period in which the product was sold”—-was "a description of the goods within the meaning of the fair use defense.” 125 F.3d at 30 (emphasis added)(internal quotation marks omitted).
Other circuits, by contrast, appear to have adopted the view of the leading trademark treatise that “to be eligible for a fair use, defendant must be using the challenged designation in a descriptive, not merely suggestive, sense.” McCarthy on Trademarks § 11.45 (citing Breuer Elec. Mfg. Co. v. Hoover Co., No. 97 C 7443, 1998 WL 427595 (N.D.Ill. July 23, 1998)). Thus the effort in Sands, Taylor & Wood Co. v. Quaker Oats Co., 978 F.2d 947, 952 (7th Cir.1992), a Seventh Circuit case cited by the majority, to determine whether the phrase "Gatorade is Thirst Aid” was descriptive or merely suggestive. See also Fortune Dynamic, Inc. v. Victoria’s Secret Stores Brand Mgmt., Inc., 618 F.3d 1025, 1042 (9th Cir.2010) (citing McCarthy on Trademarks § 11.45).

. I do think it worth noting that this “collective use” theory is in some tension with JA Apparel's call for individualized consideration of each particular use. See JA Apparel, 568 F.3d at 402. I note also that the principal authorities the majority cites in support of it are drawn from an entirely different context— the protectability of a mark as a function of its value as an identifier of source. Ante at 309-10. So although it may be true that the concept is helpful at this stage, when our only task is to identify factual plausibility, I would caution against reading the majority opinion to mean that in all cases and at all stages of litigation unique uses are to be considered "collectively.”